## UNITED STATES v. PHELAN.

(District Court, S. D. California, S. D. October 22, 1917.)

1. CRIMINAL LAW ☞720(1)—IMPROPER ARGUMENT.
   It is not legitimate argument to refer to the fact that counsel objected to the admissibility of excluded evidence.

2. CRIMINAL LAW ☞730(8)—IMPROPER ARGUMENT—CURE.
   Where the court directed the jury to disregard argument of the prosecutor concerning an objection to evidence, etc., and admonished counsel not to refer further to the matter, a mistrial should not be adjudged.

3. WITNESSES ☞387—INCONSISTENT STATEMENTS—CROSS-EXAMINATION—WRITTEN STATEMENTS.
   Upon cross-examination a witness may be asked if he had not previously made statements inconsistent with his present testimony.

4. WITNESSES ☞388(7)—INCONSISTENT STATEMENTS.
   If contradictory statements are written, the writings should be produced and exhibited to the witness.

5. WITNESSES ☞388(7)—IMPEACHMENT—PHOTOGRAPHIC COPIES OF WRITTEN INSTRUMENTS.
   Where defendant's mother testified he was born in March, 1886, and denied that she had ever stated he was born in July of that year, *held* that, in a prosecution for failure to register under the Selective Service Act, photographic copies of a written instrument wherein she stated defendant was born in July, 1886, could be exhibited to her as foundation for impeachment; the original papers being unobtainable, and the statute making photographic copies admissible.

6. CRIMINAL LAW ☞400(1)—BEST AND SECONDARY EVIDENCE.
   Where an original instrument is lost, oral testimony may be given of its contents.

Edward H. Phelan was convicted of misdemeanor for failure to register under the Selective Service Act (40 Stat. 76, c. 15), and he moves for new trial. Motion denied.

W. Fleet Palmer and Gordon Lawson, both of Los Angeles, Cal., for the United States.

Isidore B. Dockweiler, of Los Angeles, Cal., for defendant.

TRIPPET, District Judge (orally, denying motion for new trial). [1, 2] The first point made is in regard to the argument of the prosecution concerning the objection to evidence and what effect that might have on the question. It is not a legitimate argument to the jury to refer to the fact that counsel objected to the admissibility of evidence that was excluded, and it would tend to mislead the jury and prejudice them. In this case the court did all that it could do. It instructed the jury to disregard the argument of counsel, and admonished counsel not to refer further to the matter. I do not think that a mistrial ought to be adjudged by reason of such slight misconduct on the part of the United States attorney.

The indictment charges, necessarily, that the defendant was not an officer of the United States Army, etc. Besides, the matter to which Mr. Palmer referred was the statements of counsel during the trial that the only issue was the age of defendant, and that the defendant testified that he would have registered, had he been within the age limit. I think there is evidence tending to show that the defendant is a farmer, and not a soldier or sailor, or otherwise engaged in the service of the United States.

[3-5] There is a very interesting question presented by this record. I have thought of it a great deal since the trial, and have worked hard on it. A witness upon the stand, a witness very material and important to the defendant, his mother, was asked whether or not she had ever made any statement to the effect that the defendant was born on July 13, 1886. This question was asked in various and sundry ways, and there is no doubt of the position taken by the witness, namely, that she always had in her mind that the defendant was born March 13, 1886, that there was no occasion for her to ever state any different date, and that she never had stated any different date in connection with the matter.

Subsequently photographic copies or photographs of writings were exhibited to her, bearing her name; that is to say, a similar name. The presumption of law is that it was her name, being similar. She was asked if that was her signature, and she replied in various ways. She would not say positively that it was not her signature, nor that it was; but she testified that she had filed in the Pension Office certain applications and affidavits and an application for a pension. The defendant objected that she could not be impeached by the introduction in evidence of these photographic copies of writing. The objection was overruled, and the photographic copies admitted in evidence. She having testified as to the date on which defendant was born, March 13, 1886, it was relevant to the case to show that she had made statements of a contrary nature, and upon cross-examination a witness may be asked if he did not make certain statements which were inconsistent with his present testimony. The general rule is that, if the alleged contradictory statements were in writing, the writing must be produced and exhibited to the witness. Greenleaf discusses this question. At section 465 he says:

A witness cannot be asked on cross-examination whether he has written such a thing, stating its particular nature or purport; the proper course be-

ing to put the writing into his hands and ask him whether it is his writing. And if he is asked generally whether he has made representations of the particular nature stated to him, the counsel will be required to specify whether the question refers to representations in writing or in words alone, and, if the former is meant, the inquiry, for the reasons before mentioned, will be suppressed unless the writing is produced. But whether the witness may be asked the general question whether he has given any account, by letter or otherwise, differing from his present statement—the question being proposed without any reference to the circumstance whether the writing, if there be any, is or is not in existence, or whether it has or has not been seen by the cross-examining counsel—is a point which is considered still open for discussion. But so broad a question, it is conceived, can be of very little use, except to test the strength of the witness' memory or his confidence in assertion; and, as such, it may well be suffered to remain with other questions of that class, subject to the discretion of the judge.

This subject is discussed by Jones on Evidence, § 847:

Witnesses may be impeached by producing their written statements—for example, their letters, affidavits, depositions, or the like—which are inconsistent with the testimony given at the trial. Thus, where the witness testified that the plaintiff had been discharged from service for neglect of duty, a letter of the witness stating that the plaintiff had performed efficient service was held admissible. But the witness cannot, in the first instance, be asked as to the contents of what he has thus written, since this would be a violation of the familiar rule as to best evidence. This is the rule maintained in nearly all jurisdictions in this country, and in many states is declared by statute. If the question is asked whether the witness had made certain representations, his counsel has the right to ascertain whether the representation or statement was written or oral, and, if it appears to have been in writing, the paper should be produced before he is compelled to answer.

That last statement seems to be supported by a great weight of authority, and I have always understood it to be the rule. When this woman was asked concerning her contradictory statements, counsel for defendant, having full faith and belief in this case, and believing in the witness, thought, of course, that she had never made any such representations, and did not follow the course that the law prescribes should be followed; that is, he did not demand to know whether or not these supposed representations about which she was being asked were in writing or oral. He did not demand that the circumstances of time and place, etc., should be stated to the witness, but permitted her to answer that she never had made any contradictory statements. After answering, any evidence that would dispute her testimony would be relevant to the case. The statute makes these photographic copies competent evidence.

[6] But, coming down now to the exhibiting to her of these photographic copies: It does seem to me that the rule concerning exhibiting the writing to witnesses is complied with by exhibiting a photographic copy. The purpose of the exhibition to the witness of the writings is to refresh the memory of the witness; to call the attention of the witness to the circumstances; to caution the witness. That could be done by a photographic copy, as well as by the original. Where an original is lost, the fact of the loss may be established, and then oral testimony may be given of the contents of the writing. Under such circumstances, of course, the writing could not be exhibited to the witness. In this case the papers are in Wash-

ington City. As I said before, the purpose of the rule is to call the attention of the witness to the statement, in order to remind the witness of the circumstances and contents of the statement. This is a novel case, I must admit; but I think that the procedure during the trial is in entire accord with the rules of evidence concerning the admissibility of this evidence.

It is argued that this telegram and this statement here are not admissible in evidence, being hearsay of the Commissioner of Pensions. The purpose of the telegram and letter No. 6 is to show that the prosecution had endeavored to get the original papers. Bielaski is not in the Pension Department, but he is a sworn officer of the government. These two documents are public records, and establish the facts contained therein. I think they are admissible in evidence as to the facts therein stated.

There is another matter, however, in regard to the admissibility of these documents to impeach the witness, and that is concerning whether or not she had been properly asked on cross-examination whether she had ever made a statement that the defendant was born July 13, 1886. I call attention to this matter, not for the purpose of asserting my opinion that it is the law, but because I think that counsel ought to investigate the statement, to see whether or not it is the common law and proper practice. I find in a note in Stephen's Digest, at page 328, that in some of the New England states the contradictory statements of a witness can be proved without his attention being first called to them on cross-examination. There is a Maine case, one in New Hampshire, and one in Massachusetts, and one in Connecticut cited in this note. You will find in Jones on Evidence, p. 1081, a Missouri case to the same effect. It may be the common law of this country that contradictory statements may be produced in evidence without asking the witness concerning them and without exhibiting writing.

While there is some doubt in my mind as to whether or not the procedure upon the admissibility of this evidence was just exactly as it should have been, I am not satisfied that the rulings of the court were wrong. In fact, I am of the opinion that they were right, and that the evidence was properly adduced. Under these circumstances it is the duty of the court to deny a new trial, which will be done, and exceptions entered in favor of the defendant.

⬤=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes