**UNITED STATES v. WICOFF.**
No. 10270.

United States Court of Appeals
Seventh Circuit.

March 6, 1951.

Rehearing Denied April 11, 1951.

Winslow Van Horne, Auburn, Ind., E. Ross Adair, Fort Wayne, Ind., for appellant.

Gilmore S. Haynie, U. S. Atty., Noble F. Schlatter, Asst. U. S. Atty., Fort Wayne, Ind., James M. McInerney, Asst. Atty. Gen., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

DUFFY, Circuit Judge.

Defendant was tried upon an indictment containing nine counts, each charging that on a certain date he aided and abetted Clyde Grover Rectenwald, cashier of the Farmers and Merchants State Bank of Spencerville, Indiana, to willfully misapply funds belonging to said bank. Each count was based upon a check drawn by the defendant upon his account in said bank, it being charged that on each of said dates when such checks were drawn defendant knew he did not have sufficient funds in his account to pay the amount of the check. The date, name of payee, and the amount of each check listed in the counts are as follows:

Count 1: May 3, 1947, Collector of Internal Revenue, $103.60

Count 2: August 6, 1947, Gen. Motors Accept. Corp., $80.18

Count 3: September 2, 1947, General Motors Acceptance Corporation, $80.18

Count 4: April 15, 1948, Rohm Chevrolet, Inc., $161.60

Count 5: June 7, 1948, Wolf and Dessauer, $50.00

Count 6: June 7, 1948, Collector of Internal Revenue, $98.00

Count 7: February 26, 1949, Sears, Roebuck and Co., $103.66 (For Concord Twp.)

Count 8: August 2, 1949, G.M.A.C., $71.13

Count 9: September 1, 1949, G.M.A.C., $71.13

The jury found the defendant not guilty on Counts 1 to 6 inclusive, but guilty on Counts 7, 8 and 9.[1]

---

1. The acts charged in Counts 1 to 6 inclusive, upon which defendant was acquitted, occurred prior to September 1, 1948, the effective date of the Criminal Code. The wording of the statute under which those acts were alleged to be crim-

The Farmers and Merchants State Bank of Spencerville, Indiana, a small bank, employed two persons, Rectenwald and a bookkeeper. It was insured by the Federal Deposit Insurance Corporation. Rectenwald had been cashier since 1914. Shortly after defendant was graduated in 1939 from Purdue University, he went to Spencerville and was employed simultaneously by two adjoining townships as a teacher of vocational agriculture in the high school and in evening classes for veterans. One of the school trustees who hired defendant as a teacher was cashier Rectenwald. For eight years during which Rectenwald retained his position as trustee, defendant's contract could have been terminated at the end of any school year.

Defendant earned about $4,000 annually; and from 1943 to 1947 defendant's wife earned about $2,000 annually teaching school. Defendant and his wife customarily deposited their pay checks at the bank, usually withholding a small sum therefrom as pocket money. From the date defendant opened his account at the bank through September 1, 1949 (the date of the check described in Count 9), defendant's account and all statements he received always showed a credit balance. The statements received were copies of the bank's ledger sheets. Apparently Wicoff received a statement at the end of whatever period the volume of the items filled a sheet. In the earlier years when only one side of a sheet was used, the statements covered a four to five month period, and when both sides were used, an eight to ten month period. Wicoff did not receive any statements after 1947 although he testified he

made about ten requests therefor, but that Rectenwald answered that he was too busy to prepare and send them. None of defendant's checks was ever returned to him by reason of insufficient funds.

Rectenwald disappeared, and the Federal Deposit Insurance Corporation operated the bank from September 22 until October 8, 1949, when it was closed. Two hundred ten checks drawn by defendant on his account, and ranging in date from 1940 to 1949, were found in various places about the bank, such as in a safe, in the back room, in the basement, and elsewhere. These checks, when presented over a nine year period, had been paid by the bank but had not been charged against defendant's account. Deposits and checks alike would be held by Rectenwald, sometimes for as long as a month, without being entered in the Wicoff account. Upon adjusting defendant's account, crediting him with deposits totaling $724.40 not theretofore credited, and subtracting his checks not charged against his account, it was discovered defendant was overdrawn in the sum of $6,016.99.

On December 21, 1945, in a conversation at the bank, Rectenwald advised Wicoff that he had some checks which Wicoff should cover with a note. Wicoff expressed a willingness to do so, and executed a note for $1,000 prepared by Rectenwald.

In December, 1948, Rectenwald called Wicoff to the bank concerning the renewal of the note. He also informed Wicoff that he had some checks which Wicoff must cover with money. Wicoff said that he

---

inal offenses, so far as here applicable, was: "Any officer * * * of any insured bank * * * who embezzles, abstracts, or willfully misapplies any of the moneys, funds, or credits of such * * * insured bank * * * with intent in any case to injure or defraud such * * * insured bank, * * * and every person who, with like intent, aids or abets any officer * * * in any violation of this section shall be deemed guilty of a misdemeanor, * * * *." 12 U.S.C.A. § 592.

In the Criminal Code of 1948 this section was revised to read: "Whoever, being an officer, * * * of * * * any

* * * insured bank * * * embezzles, abstracts, purloins or willfully misapplies any of the moneys, funds, or credits of such bank or any moneys, funds, assets * * * intrusted to the custody or care of such bank * * * shall be fined * * * *." 18 U.S.C.A. § 656.

The express provisions as to aiders and abettors was deleted as being covered by 18 U.S.C.A. § 2(a), which reads: "Whoever commits an offense against the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

had two insurance policies upon which he believed he could borrow money. He later found that he could obtain $600 on only one policy, and he did so, and brought that sum to the bank about January 10, 1949, delivering it to Rectenwald and asking if that amount would do it, and Rectenwald replied that it would take care of them (the checks).

Rectenwald was apprehended and pleaded guilty to the charges against him. Prior to being sentenced he was a government witness in the case at bar. While denying that he had ever said that $600 would be sufficient to cover the checks, he testified that Wicoff did hand him $600 and that he gave him a receipt for same on the back of a deposit ticket. He testified that he told Wicoff he would pick up $600 in checks and would not run the deposit through Wicoff's account. He also testified that he never knew a time when the Wicoff account was *not* overdrawn.

Rectenwald testified he had called Wicoff's attention to the overdraft on several occasions, but had never mentioned the amount thereof; that he only knew the approximate total deficiency from what he read in the newspapers. Wicoff admitted that at times Rectenwald had said, referring to his account, "You better watch it," whereupon Wicoff refrained from writing further checks on his account until he had made another deposit. Wicoff testified that he never had any intention of defrauding the bank or of aiding, abetting, or encouraging Rectenwald in misapplying funds of the bank.

On October 5, 1949, one of the liquidators at the bank told Wicoff that he had a stack of checks which he had every reason to believe had not been charged against his account. Wicoff replied that he would pay any check he had ever written upon presentation of the claim. During the trial defendant offered to prove that he had paid the total amount of the uncharged checks in accord with the conversation with the liquidator, but the offer of such proof was rejected.

■ Defendant assigns as error the admission into evidence of the bank ledger sheets of the Dale Wicoff account which covered a period from June 24, 1946, to September 22, 1949. Defendant insists that although the proof showed these records were kept in the regular course of business, it also disclosed that $724.40 in credits, and two hundred ten checks of various amounts had not been entered on said records during a period of some nine years; further that many of the transactions were not entered on the correct date. Defendant also further objected that the exhibits were not a complete record of the Wicoff account, in that ledger sheets from the beginning of the account were not introduced. Defendant argues that these records were thus proved to be entirely untrustworthy, and cites cases where untrustworthy records were held inadmissible.

The government was not endeavoring to impose a liability upon the defendant based upon the correctness of these records. One purpose of the exhibit was to show that two hundred ten of defendant's checks had not been charged by Rectenwald to the account. We think the exhibits were admissible for that purpose. Title 28 U.S.C.A. § 1732 provides for the admissibility of books and records made in the regular course of business, but does not require that they be correct in all respects. That section also contains the following language: "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility."

We hold that there was no error in admitting the bank ledger sheets into evidence.

The defendant sought to prove that many other depositors of the bank also had overdrafts, but he did not offer to show that he had any knowledge of such fact prior to the time that the F.D.I.C. took charge of the bank. We agree with the trial court that such evidence was immaterial unless the defendant had some knowledge thereof prior to September 22, 1949.

■ Defendant was convicted on Count 7 which was based on his check for $103.66,

dated February 26, 1949, payable to Sears, Roebuck and Company, on the face of which was written, "For Concord Twp." Defendant made an offer of proof that on February 26, 1949, he purchased goods and merchandise from Sears, Roebuck and Company for and on behalf of the Township of Concord School, giving in payment therefor his own personal check on his account in the Spencerville bank, that within a very short time thereafter he received from the Trustee of Concord Township a check for $103.66 which he promptly deposited in his account, receiving credit for $90, and that he may have received on said date from the bank the sum of $13.66. This offer of proof was rejected. From one of the government's exhibits, it appears that on February 26, 1949, according to the bank records, there was a balance of $13.72 in Wicoff's account.

One of the essential elements of the offense charged in Count 7 is intent. Did the defendant issue the check to Sears, Roebuck and Company with the intent to defraud the bank, knowing that there were insufficient funds in his account? It would appear defendant issued his own check merely for convenience, knowing that he would promptly receive a check from the township in like amount, which he intended to deposit. We believe the defendant should have been permitted to introduce into evidence the proffered testimony in order to try to prove his lack of intent to defraud the bank, and that the trial court committed error in excluding this evidence.

■■ A number of character witnesses, including a retired judge who had presided for twenty-four years in the Circuit Court in the county where Spencerville is located, testified that defendant's reputation for veracity and integrity in the community where he lived was very good. A part of the court's instruction on this type of evidence was: "* * * Evidence of good character of a defendant in a criminal case is not to be considered unless the other evidence which you have heard in the case leaves in the minds of the jurors a doubt as to the defendant's guilt. If there is any doubt as to the guilt of the defendant, and it need not be a reasonable doubt, then such evidence, that is, character evidence, may be considered under such circumstances, and if it is considered under such circumstances, then that character evidence may be of such weight or may be so persuasive as to itself create a reasonable doubt." The first part of the court's instruction above-quoted is not a correct statement of the rule on character evidence. Such evidence may in itself be sufficient to create in the minds of the jury a reasonable doubt of the guilt of the defendant. United States v. Donnelly, 7 Cir., 179 F.2d 227, 233; Miller v. United States, 10 Cir., 120 F.2d 968. This is especially true in cases involving the element of fraudulent intent. Edgington v. United States, 164 U.S. 361, 17 S.Ct. 72, 41 L.Ed. 467; Marzani v. United States, 83 U.S.App.D.C. 78, 168 F.2d 133, affirmed, 335 U.S. 895, 69 S.Ct. 299, 93 L.Ed. 431, rehearing granted and reaffirmed, 336 U.S. 922, 69 S.Ct. 513, 93 L.Ed. 513; United States v. Quick, 3 Cir., 128 F.2d 832, 835; Snitkin v. United States, 7 Cir., 265 F. 489. It is, of course, fundamental that instructions to the jury must be considered as a whole, but even so we are not convinced that the jury in the case at bar was not confused and misled by the portion heretofore quoted, and we feel that error was thus committed.

■ Although it is a general rule that restitution is not a defense, Duvall v. United States, 3 Cir., 94 F.2d 911, 913, we think it was error in this case to deny the defendant the opportunity of proving that he made good the amount of the checks which had not been charged against his account. Defendant had testified he did not know of such checks being outstanding until so informed by the liquidator, and that he immediately stated he would pay the amount thereof upon a claim being presented. He had testified that on two previous occasions when Rectenwald had asked for payment to cover checks, he had promptly executed a note for $1,000 in one instance and paid Rectenwald $600 in cash in the other. With the question of intent being of supreme importance, the

jury should have been permitted to give consideration to such evidence.

It is as difficult to understand Rectenwald's actions in permitting repeated overdrafts as in the case of the cashier in United States v. Matot, 2 Cir., 146 F.2d 197, where the defendant was charged with aiding and abetting the cashier in the willful misapplication of moneys of the bank. In an opinion written by Judge Learned Hand, the court said, 146 F.2d at page 198: "Indeed, Holmes's (the cashier) own defalcations were also curious; it remains totally inexplicable why he should have accommodated his friends without any ascertainable profit to himself and at great risk. For these reasons any evidence of Matot's good faith was highly important. * * * It is of course possible that the offer indicated only a change of heart, an effort to avoid the consequences of what he had done; but it was also possible to take another view and read it as confirmation of his denial that he had ever contemplated a fraud, and that he was ready to go to lengths to protect the bank. That possibility appears to us enough, especially in so close a case, to entitle him to lay the interview before the jury to interpret as they would."

We have considered defendant's other assignments of error as to the instructions and receipt of evidence, but hold that they must be overruled.

That this was a close case is indicated by the fact that the jury acquitted the defendant on the first six counts, which were very similar to the three upon which conviction was had. What effect, then, did the errors hereinbefore described have, or what effect may they reasonably have had, upon the jury's decision? Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557. We conclude that the cumulative effect of such errors prejudiced substantial rights of the defendant to the end that the judgment of guilty herein cannot be sustained.

Reversed and remanded for new trial on Counts 7, 8, and 9.

## On Petition for Rehearing

Defendant-appellant petitions for a rehearing despite a new trial being ordered on his appeal from the judgment of conviction. Defendant insists that in several respects we did not specifically pass upon the refusal of the trial court to admit certain testimony offered by him at the trial, and that unless we do so rule the district court will again sustain objections to such proffered testimony, all to his great prejudice.

The testimony at the trial disclosed that a considerable number of defendant's checks which had been cashed by the bank, but which had not been charged against his account, were found in a safe in the back room of the bank building. The court sustained an objection to a question seeking to elicit testimony that many checks of other depositors who were not overdrawn were found at the same time in the same place. We think such testimony was admissible, as bearing upon any inference the jury might draw from the fact that defendant's checks were kept in such an unorthodox location. In the same category was the proffered testimony as to the account of Wayne Neuhouser, where the bank records showed he was overdrawn when in fact he had a bank balance. Such evidence would tend to rebut the inference which the government sought to draw as to the reason for deposits being withheld from defendant's account.

We have considered the other contentions made by defendant-appellant. In so far as they have any merit, the opinion heretofore rendered is sufficient. The opinion of this court dated March 6, 1951, may be considered modified as herein indicated.

The petition of defendant-appellant for rehearing is denied.