**BRIGGS v. UNITED STATES.**

**CLARK**

v.

**UNITED STATES.**

Nos. 6761, 6765.

United States Court of Appeals
Fourth Circuit.

Argued June 2, 1954.

Decided July 28, 1954.

W. P. Sandridge, Winston-Salem, N. C. (Leon L. Rice, Jr., and C. W. Womble, Winston-Salem, N. C., on brief), for appellant Briggs.

Carlisle W. Higgins, Winston-Salem, N. C., for appellant Clark.

Fred G. Folsom, Sp. Asst. to Atty. Gen. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Sp. Asst. to Atty. Gen., and Edwin M. Stanley, U. S. Atty., Greensboro, on brief), for appellee.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

PARKER, Chief Judge.

These are appeals from sentences imposed upon conviction of filing false and fraudulent income tax returns for the years 1946, 1947 and 1948 in violation of section 145(b) of the Internal Revenue Code, 26 U.S.C.A. § 145(b). The cases were heard by the District Judge without a jury upon a stipulation as to the facts, as to which there is no dispute. From a finding that they were guilty of the crime charged and the imposition of sentences of imprisonment of a year and a day in each case, the defendants have appealed.

The facts may be briefly stated. The defendant Clark was property superintendent of the Carolina Aluminum Company and was authorized to procure bids on surplus lands which that company desired to sell. He entered into an arrangement with the defendant Briggs under which Briggs was to secure purchasers and the lands were to be sold to them at prices in excess of prices which were to be reported to the company and which the company would be willing to accept. He and Briggs were to divide the excess between themselves. They operated this fraudulent scheme over a period of years during which each received in excess of $100,000, which he used as his own money, Clark admittedly using the amount which he received in the purchase, development and improvement of real estate which he acquired in his own name. The company did not discover the fraudulent conduct in which they were engaged until after they had been indicted for violation of the income tax laws in these cases, when they made restitution, defendant Briggs paying to the company the sum of $100,000 and Clark giving a note for $141,250 secured by mortgage on the real estate which he had purchased.

Neither Clark nor Briggs reported in their income tax returns any part of the moneys received by them in connection with these land transactions, although the amounts so received were far in excess of the income which they did report for the years in question. Their principal defense is that they realized no taxable gain with respect to these moneys for the reason that Clark was guilty of embezzlement and Briggs of aiding and abetting the embezzlement and consequently that they had no claim of right to the moneys received and received same under an unqualified obligation to repay. For support of this position they rely upon the decision in Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, Briggs makes the additional contention that there was no sufficient showing of criminal intent, since as he contends there was reasonable doubt as to the taxability as income of the moneys received by him, even if they be held so taxable.

We think that the District Judge properly adjudged both defendants guilty. We need not go into the question as to whether they were guilty of embezzlement under the North Carolina statutes; for we think it perfectly clear that through the fraudulent transactions in which they were engaged they received moneys over which they had complete control, which they treated as a part of their estates, which resulted in economic value to them and for which they probably never would have been required to account, had it not been for the discovery of the fraud on the revenue which they were perpetrating in connection therewith. The case is controlled, we think, by the decision of the Supreme Court in Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 574, 96 L.Ed. 833, a case involving money obtained by extortion. While effort is made to distinguish this case on the ground that the accused there had a basis for claiming the money which he received, the court based its decision on no such ground, but said: "Under the jury's verdict, we accept the fact to be that petitioner had no basis for his claim to this $250,000 and that he obtained it by extortion." The accused thus had no claim to the money received

and unquestionably received it under an unqualified obligation to repay. Nevertheless, the Supreme Court held that it constituted taxable income to the accused and that he was guilty of a violation of section 145(b) of the Revenue Code in not reporting it as such. The court said, 343 U.S. at page 137, 72 S. Ct. at page 575:

"An unlawful gain, as well as a lawful one, constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it. Burnet v. Wells, 289 U.S. 670, 678, 53 S.Ct. 761, 764, 77 L.Ed. 1439; Corliss v. Bowers, 281 U.S. 376, 378, 50 S.Ct. 336, 337, 74 L.Ed. 916. That occurs when cash, as here, is delivered by its owner to the taxpayer in a manner which allows the recipient freedom to dispose of it at will, even though it may have been obtained by fraud and his freedom to use it may be assailable by someone with a better title to it. Such gains are taxable in the yearly period during which they are realized. This statutory policy is invoked in the interest of orderly administration. '(C)ollection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant.' National City Bank [of New York] v. Helvering, 2 Cir., 98 F.2d 93, 96. There is no adequate reason why assailable unlawful gains should be treated differently in this respect from assailable lawful gains. Certainly there is no reason for treating them more leniently. United States v. Sullivan, 274 U.S. 259, 263, 47 S.Ct. 607, 71 L.Ed. 1037."

The case of National City Bank of New York v. Helvering, 2 Cir., 98 F.2d 93, 95, 96, cited in the opinion of the Supreme Court, is very much in point here. In that case officers of certain oil companies had organized another company which bought oil at $1.50 per barrel and sold it to their companies at $1.75 per barrel. The question in the case was the taxability as income to one of these officers of funds that he had received as a result of this transaction. In holding that they were thus taxable the Court of Appeals of the Second Circuit, speaking through Judge Learned Hand, said of the funds thus received:

"They were of course the property of the Prairie company in the sense that it could have reclaimed them: they were not therefore like the earnings of an illicit liquor seller, which belong to him, however acquired. United States v. Sullivan, 274 U.S. 259, 47 S.Ct. 607, 71 L.Ed. 1037, 51 A.L.R. 1020; Steinberg v. United States, 2 Cir., 14 F.2d 564. But there are several cases in which persons have been taxed upon property which could be recovered from them. For example, the lender upon usurious interest— if on an accrual basis—must include his apparent profit in his return, though possibly he may be allowed to deduct it as a loss if the borrower reclaims it. Barker v. Magruder, 68 App.D.C. 211, 95 F.2d 122. Again, when a railroad collects too large fares, the excess is income, though the passengers have a theoretical right of restitution. Chicago R. I. & P. R. Co. v. Commissioner, 7 Cir., 47 F.2d 990. In Board v. Commissioner, 6 Cir., 51 F.2d 73, 75, an unlawful bonus obtained by a director at his company's expense was held to be income; and, although the taxpayer seeks to distinguish the decision because the company knew of the arrangement, that did not make it lawful. * * * Although taxes are public duties attached to the ownership of property, the state should be able to exact their performance without being compelled to take sides in private controversies. Possession is in general prima facie evidence of ownership, and is perhaps indeed the source of

the concept itself, though the time is long past when it was synonymous with it. It would be intolerable that the tax must be assessed against both the putative tortfeasor and the claimant; collection of the revenue cannot be delayed, nor should the Treasury be compelled to decide when a possessor's claims are without legal warrant. If he holds with claim of right, he should be taxable as an owner, regardless of any infirmity of his title; no other doctrine is practically possible, and no injustice can result. We think therefore that O'Neil was taxable upon the bonds for the years 1922 and 1923."

See also the very recent case of Rollinger v. United States, 8 Cir., 208 F.2d 109, 112, where the Court of Appeals of the Eighth Circuit affirmed the conviction of an agent who had fraudulently realized income in dealing in diamonds and zircons for his principal, and who relied upon the Wilcox case as a defense. The court, after quoting the passage which we have quoted from the Rutkin case, concluded, "Hence, ill gotten gains constitute income for taxation purposes."

The case of Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752, upon which defendants rely is very different from the case at bar. That was a case where a bookkeeper took his employer's money and lost it in gambling. In the later case of Rutkin v. United States, supra, the Supreme Court said of it, "We limit that case to its facts"; and, as pointed out in the dissenting opinion in the Rutkin case, the effect of the doctrine laid down in the opinion of the court was "to depart from the Wilcox holding". When the Wilcox case is limited to the facts, it clearly has no application here. There is little similarity between the case of the bookkeeper who lost his employer's money at gambling and that of the defendant Clark who realized a secret profit on the sale of his employer's land and bought $140,000 worth of real estate with it, taking title in his own name. There is even less similarity to the case of the defendant Briggs who was not an agent of the company, who unquestionably received his share of the money in his own right and not as agent and who could have been required to account for it only on the theory that he had participated in the fraud.

■ There is no merit in the contention that criminal intent has not been shown. The facts stipulated show that both defendants were engaged in a fraudulent scheme and realized gains and profits as a result thereof. There is nothing in the stipulation to justify a conclusion that they believed or had reason to believe that these were not taxable nor is any other excuse suggested for not reporting them as income. As said by the judge below: "They took it as money of their own and used it as money of their own, and exercised absolute dominion over it themselves, and there was no intent on their part then ever to return it; and I can't believe there is any belief on their part that any part of it belonged to the company or that it had any claim on it, and they used it for six or seven or eight years; and it was not until the company jumped on them after this indictment that they took the position that possibly they were guilty of embezzlement. * * * Considering the amount of income from other sources they did report, to me it's inconceivable they failed to include this income through any oversight or neglect or doubt about their legal right to do it, but it was in keeping with their intention to conceal the true facts from the company and with intent to evade payment of taxes." When the prosecution showed the filing of tax returns for the years in question with the omission of these large items of income, this with the other circumstances to which we have adverted made out a prima facie case as to criminal intent as well as to the other elements of the crime sufficient to take the case to a jury or uphold conviction where it is tried by the judge without a jury. See Rollinger v. United

States, supra, 8 Cir., 208 F.2d 109; United States v. Rosenblum, 7 Cir., 176 F.2d 321; Stinnett v. United States, 4 Cir., 173 F.2d 129; Battjes v. United States, 6 Cir., 172 F.2d 1, 5; Barrow v. United States, 5 Cir., 171 F.2d 286; Chadick v. United States, 5 Cir., 77 F.2d 961, 964. A contention as to non-taxability of income is no sufficient defense for not reporting it. This is implicit in the decision in Rutkin v. United States, supra. As said in Battjes v. United States, supra, " 'Direct proof of willful intent is not necessary. It may be inferred from the acts of the parties, and such inference may arise from a combination of acts, although each act standing by itself may seem unimportant.' "

Affirmed.