**Bill CORBETT, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 14801.**

United States Court of Appeals
Ninth Circuit.

Nov. 14, 1956.

558

Little, LeSourd, Palmer, Scott & Slemmons, F. A. LeSourd, Brockman Adams, Seattle, Wash., for appellant.

Charles P. Moriarty, U. S. Atty., Seattle, Wash., John S. Obenour, Jr., Asst. U. S. Atty., Tacoma, Wash., for appellee.

Before ORR, and CHAMBERS, Circuit Judges, and TOLIN, District Judge.

TOLIN, District Judge.

After trial in the District Court defendant was convicted of Counts One and Two of a four-count indictment which charged four separate violations of Title 26 U.S.C. § 145(b) [wilful evasion of income tax]. The District Court dismissed Count Four, and the jury acquitted defendant of Count Three.

Among the grounds urged for reversal is the familiar one that the Court erred in denying defendant's motion for judgment of acquittal. The basis for the motion was insufficiency of the evidence. In asserting this ground, appellant urges a different view of his earnings than he related before indictment to prospective purchasers of his business. They, in turn, as witnesses, recalled defendant's narrative of current affluence during the indictment period.

Defendant's income during the years here in question [1] was derived principally from his operation of the Claremont Hotel in Seattle, Washington. Dewey Metzdorf, a prospective purchaser of the Claremont, testified that appellant had told him during 1946 that the hotel was netting $86,000.00 per year. Appellant reported on his tax return for 1945 (filed in 1946) that his net income for that year was $10,021.48, and for 1946 he reported $8,274.44. On another occasion appellant told a business visitor to the hotel of a technique relating to late night hotel rentals whereby, "I rent the rooms or my boy rents the rooms and we never make any accounting for tax purposes—it does amount to considerable."

The prosecution theory as to all counts was that the sum total of a large number of irregular practices in handling the finances of the hotel resulted in an understatement of income on the books of the hotel and that defendant knowingly and wilfully used the understatement as a correct one for tax purposes. The Government contended the true net income in 1945 had been $23,359.07 and the 1946 net income was actually $26,759.01. Summarizations of the evidence of income supported appellee's contention as to these amounts. Appellant's employees testified that it was their custom, at the oral direction of appellant, to enter records of allowances on the guests' accounts, whereas such allowances had not in fact been given the guests. In addition to a system of original false entry of such allowances on the books, there was testimony by employees that many

1. Count One, 1945; Count Two, 1946.

records of the hotel were changed to convert original book entries showing payments of room rentals into entries showing allowances or credits to guests. These book alterations were made by use of erasures and ink eradicator, with new figures written in by, or at, the direction of appellant. By this method, that which originally had been recorded as "income" was changed to appear as "outgo". The testimony of the several witnesses to this method of falsely creating records of allowances or credits supports the Government's claim that the recorded income of the Claremont was reduced $14,595.00 in 1945, and $17,542.00 in 1946. Expert examination of the records, by use of a fuming process which partially restored and made visible the original entries, corroborated the employees' testimony of extensive entry alterations. One of the employees who assisted appellant in his changing of records testified extensively to what had been done, and further testified that appellant told her she was as guilty as he. In addition to large scale use of this system, many payments of room rentals went directly to appellant without having any book record made of the receipt of the money. Two clerks and a bookkeeper testified to operation of these systems.

Appellant claimed that the entries of "allowances" to guests correctly reflected the frequent granting of brief free rent as a good will gesture to a permanent guest or a courtesy to persons whose residence in the hotel would enhance its prestige.

Opposed to this exculpatory testimony of appellant was the testimony of many guests as to whom the records showed "allowances" but who testified that, on the contrary, there were no allowances in their cases but the accounts were paid in full.

Employees of appellant who testified that they had followed his instructions in such manipulations, segregated large numbers of the hotel records which they asserted were of this false character.

A night clerk also testified to withholding from any record whatever, those lodgings rented during late night hours. The monies collected from this class of rental were handed to appellant each day in an envelope. The same clerk testified to similar handling of rentals collected from servicemen who patronized a one-dollar per cot service for the use of sleeping facilities on the hotel mezzanine.

This testimony attributed considerable additional income to defendant. The exact amount is uncertain because the employee witness stated it by estimates. By any of the methods used by him to compute this sum, a substantial unreported income was related. Either the improper allowance method, or the failure to report night rentals would in itself establish an income higher than that reported.

During the giving of testimony by Government agents in which written computations and summaries were used, there were frequent defense objections to the use of summaries, and the District Court as frequently pointed out to the jury that the agents' testimony in this field was not the primary evidence but a summary of other evidence.

In its very complete and readily understandable instructions, the Court referred to the agents' summaries in this way:

"There have been admitted in evidence certain exhibits, variously referred to here as schedules or summaries. Strictly speaking these exhibits are not received as evidence themselves, but are admitted as a summary of the evidence admitted in the case and the summaries are admitted only for your assistance and convenience in considering the other evidence which they purport to summarize. Exhibits of this nature are permitted where they are based upon voluminous books, records or documents, but you are reminded that it is the books, records and documents which are the evidence and the summaries are admitted only to assist you in considering the evidence, and for that pur-

pose you are entitled to consider them."

Despite this formal instruction in the charge and appropriate cautionary comment by the Court while the summary evidence was being received, it was emphatically urged on this appeal that the allowance of testimony of summaries invaded the province of the jury. It is also claimed that the summaries are incorrect.

■ Computation and summaries by expert accountants has long been allowed for the use of juries in this type of case.[2] It was specifically approved by the Supreme Court in United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546. Among safeguards which must be applied are procedural methods which bring before the jury the basic evidence which is summarized; also that broad scope of cross-examination be permitted in order that the accuracy of the accountant's summary may be tested. It must be made clear to the jury that such testimony and charts are but summaries of other evidence and that the jury should examine the basis upon which summarization rests, for it is not primary evidence at all but, instead, a gathering together and accounting classification of primary evidence.

In United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 1241, the Supreme Court, in upholding this type of evidence, said:

"* * * No issue was withdrawn from the jury. The correctness or credibility of no materials underlying the expert's answers was even remotely foreclosed by the expert's testimony or withdrawn from proper independent determination by the jury. The judge's charge was so clear and correct that no objection was made, though, of course, there were exceptions to the refusal

to grant the usual requests for charges that were either redundant or unduly particularized items of testimony. * * *"

That language applies equally well to this case. The argument to this Court that the summaries were incorrect or were not supported by evidence, asks this Court to reassess what was, and always is, the jury's duty to examine and reject or accept. The record in this case shows a careful compilation in court of the foundation material before reception of a summarization by the accountant.

■ Among the summaries was one by which the Government sought to trace some of the amounts of money from defendant's original records into deposits of equivalent amounts in his bank account. The investigating agent testified in part from an examination of bank deposit slips but all of the deposit slips relating to Count One were not in the mass of documentary evidence because a destruction of old records procedure had been employed by the bank in the usual course of disposition of old records.[3] The checking of bank deposits equal in amount to funds made available by the false hotel income recording system was also an enumeration of the details of false entries and alteration of the hotel records which were in evidence. Appellant overlooks this dual function of the expert witness testimony and claims error in that the witness testified to the content of bank records which were not in evidence. In actuality, this was a small portion of a considerably larger analysis. It related to no more than a small amount of a total which would have been impressive without this disputed item. However, the use in the computation of bank deposit slips which had been destroyed before trial, was not improper. It has long been recognized that when a record has been destroyed, secondary evi-

---

2. Barcott v. United States, 9 Cir., 169 F. 2d 929; Gendelman v. United States, 9 Cir., 191 F.2d 993; Remmer v. United States, 9 Cir., 205 F.2d 277.

3. This was true as to Count One only. The deposit slips as to Count Two were complete.

dence of its contents may be admitted.[4] That is what occurred in this case.

Examination of the entire record convinces this Court that all required safeguards were applied in the reception of the expert summary testimony and that the basic evidence had been elaborately computed and accurately summarized.

The judgment should be, and is hereby, affirmed.

---

4. Goldsmith v. United States, 2 Cir., 42 F.2d 133; Callanan v. United States, 8 Cir., 223 F.2d 171; United States v. Phelan, D.C., 252 F. 891; United States v. White, 2 Cir., 223 F.2d 674; Wigmore, 3rd Edition, Sec. 1192.