UNITED STATES of America,
Plaintiff-Appellee,

v.

Leonard M. BERNARD, Charles E. Bernard and James B. Jackson,
Defendants-Appellants.

No. 12868.

United States Court of Appeals
Seventh Circuit.

Jan. 26, 1961.

Rehearing Denied April 16, 1961.

**716**

Maurice J. Walsh, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill. (John Peter Lulinski, Mitchell S. Rieger, Asst. U. S. Attys., Chicago, Ill., of counsel), for appellee.

Before HASTINGS, Chief Judge, DUFFY, Circuit Judge, and MERCER, District Judge.

MERCER, District Judge.

The defendants, Leonard M. Bernard, Charles E. Bernard and James B. Jackson, were charged by indictment with having wilfully attempted to evade and defeat a part of the corporation income tax due and payable to the United States of America for the taxable year 1948 by Bernard Bros., Inc., a corporation, by the filing of a false and fraudulent income tax return on behalf of that corporation.[1] The return was alleged to have been false and fraudulent, as defendants well knew, in that the corporate income therein reported was understated in the amount of approximately $78,000.00 and that the tax due to the United States was therein understated by approximately $30,-000.00. After a trial before a jury, a judgment of conviction was entered by the court upon the jury's verdict finding all defendants guilty as charged in the indictment. Defendants appeal from that judgment.

During 1948, Bernard Bros., Inc., was a franchised dealer in new DeSoto and Plymouth automobiles at Evanston, Illinois. Defendants in the respective order in which they are above named, were the president, vice-president and treasurer of that corporation. For the taxable year 1948 an income tax return was filed on behalf of the corporation reporting taxable income of $298,833.64, and a total tax due of $113,556.78. That return was signed by defendants, Leonard M. Bernard and James B. Jackson, in their respective capacities as president and treasurer of the corporation.

The judgment must be reversed as to the defendant, Charles E. Bernard. The government concedes in its brief "that the evidence of Charles Bernard's guilt lacks the overwhelming persuasiveness of the case against Leonard Bernard and Jackson." We are convinced upon a review of the record that the evidence against this defendant lacks overwhelming persuasiveness to such extent that there is no evidence of his guilt of the crime charged.

■ Viewed in the light most favorable to the government, the evidence

---

1. The indictment also named the former cashier and bookkeeper of Bernard Bros., Adelaide Locke Adsit, as a defendant. The court directed her acquittal at the close of the government's case.

shows only that Charles Bernard was the vice-president of the corporation in 1948 and that he participated to some extent in the conduct of the corporate business in that year. The evidence fails to show that he had any knowledge of the books and records of the corporation, or that he participated in the preparation of the corporate tax return for 1948 or had any knowledge as to the filing or content of that return. His motion for acquittal made at the close of the government's case should have been granted.

The remaining defendants, Leonard M. Bernard and James B. Jackson, who are hereinafter referred to as defendants, except as the context otherwise requires, assert a number of alleged procedural errors as a basis for reversal of the judgment. In order that these alleged errors may be placed in focus, the following summary of background facts and of the procedural chronology of the trial is set forth in advance of discussion of the particular errors alleged.

The theory of the government's case was that defendants, as officers and agents of Bernard Bros., adopted a policy of selling a substantial part of the corporation's new 1948 automobiles to used car dealers for a cash bonus over and above the manufacturer's list price; that, upon the sale of such cars for a cash bonus, the list price only was entered in the corporation's sales records; and that bonus payments received for such cars were not included in the corporation's gross sales as reported in the 1948 corporation tax return. To sustain its burden of proof upon that theory, the government undertook to prove the receipt by defendants and other agents of the corporation of cash bonus payments upon the sale of 103 specific new cars sold in 1948, and the omission from the corporation tax return of the specific items of income reflected in the receipt of such bonus payments.

As the keystone of its specific-omitted-item proof, the government introduced into evidence the corporate records of Bernard Bros., and the key book of those records was the sales journal, which contained entries reflecting a sales price and a factory installed identification serial number for each new car sold by the corporation in 1948.

The foundation for introduction of the Bernard Bros. records was laid by the testimony of Robert H. Sharp, an internal revenue agent. Sharp testified that he had received the Bernard Bros. books, including the sales journal, from the defendant Jackson, in 1950. In July, 1950, Sharp and a second agent made a complete transcript of new car sales for the year 1948 as shown by the entries in those books and records. From comparison of that transcript with the Bernard Bros. sales journal, Sharp was able to testify that the sales journal was the same book from which he had made the transcript of new car sales in July, 1950. Sharp further testified that the net taxable income figure of $298,833.64, reported on the Bernard Bros. income tax return for 1948, was derived from the books which he had examined, and that the closing journal entries of all profit and loss accounts shown upon the corporation's books agreed, precisely, with corresponding items reported on the return. He testified that he could identify the books, including the Bernard Bros. sales journal, as records kept by Bernard Bros., because they had been supplied to him at his request by the defendant, Jackson, and had been identified to him as the Bernard Bros. books by both Jackson and Leonard Bernard. Sharp also testified that Leonard Bernard had stated to him in 1950 that all gross income of Bernard Bros. for 1948 was reflected in the books supplied to Sharp by Jackson and in the corporation tax return filed on behalf of the corporation for 1948.

The testimony of Sharp and the Bernard Bros. books constituted the first leg of the government's specific-omitted-item proof. The second leg of proof was approached through the testimony of witnesses and certain records of used car dealers which tended to show that each of the 103 new cars had actually been sold to a used car dealer, either di-

rectly or indirectly, and that defendants and agents of Bernard Bros. had received a greater price for each of those cars than that shown by the corporation's books.

The 103 sales fell into two categories, direct and indirect. Adley Lorbeer, Anthony Volante and officers of Stoltz Motors, Inc., which is hereinafter referred to as Stoltz, testified with respect to a number of transactions in the first category. For example, Volante testified that he had purchased new Plymouths from Bernard Bros. in 1948 and that he had dealt with the sales manager George Smith in these transactions. He identified 7 invoices which he had obtained from Bernard Bros. with the delivery of new Plymouths purchased in 1948 from that corporation. Each of those documents identified, by factory serial number, one of the new automobiles shown by the Bernard Bros. sales journal as having been sold in 1948. He further testified that he had paid exactly $400.00 more than the invoice price for each of the automobiles purchased.

The other direct sale testimony was similar, consisting of the testimony of witnesses and the identification of invoices, checks or business records tending to show the purchase in 1948 by a used car dealer witness of specific new automobiles which could be identified with entries in the Bernard Bros. sales journal. In some instances the government sought to prove the bonus price paid for specific cars by oral testimony. In others, the evidence of amount of bonus payments was reflected upon the car dealer's records.

The second category of transactions, indirect sales, encompassed a majority of the specific transactions to which the government's evidence related. In indirect transactions, new cars were channeled to used car dealers through third parties who were commonly known to the trade as "bird-dogs".

"Bird-dogs", Edward Gallagher, Lawrence Fisher, Anthony Antonucci, Raymond Stoltz and Joseph D. Kaziny, were key government witnesses relative to indirect sales.

The testimony of Gallagher is representative of the "bird-dog" evidence adduced by the government. Gallagher testified that he had purchased a number of new cars in 1948 from agents of Bernard Bros. for Nichols Motor Sales, a used car dealer, which is hereinafter referred to as Nichols. He could not recall the dates and auto serial numbers involved in any transaction, but stated that, in each instance, he paid cash for the car purchased and received a Bernard Bros. invoice for each car purchased. He further testified that the car and invoice were delivered by him to Nichols.

Gordon Nichols and other Nichols' employees were then called by the government to lay the foundation for the introduction of records kept by Nichols relative to the purchase of cars in 1948. Those records, and the testimony relative thereto, tended to prove that Nichols had purchased 35 new cars from Gallagher in 1948 which were shown by the sales journal of Bernard Bros. as having been sold by that corporation.

The evidence of other "bird-dog" transactions followed the same sequence —the testimony of the "bird-dog", followed by introduction of the records of the used car dealer for whom he had purchased new cars.

Although the testimony as to each particular transaction differed, the transactions as to which evidence was adduced were all similar in nature. The witnesses, whether "bird-dog", used car dealer or used car dealer employee, testified as to a sequence of events substantially as follows: Each witness approached one of the defendants, Charles Bernard or Mr. Smith to arrange for the purchase of a new car or cars; the person with whom he dealt would, in each instance, require that the car be paid for in cash for a price above the manufacturer's list price thereof and that the purchaser supply to Bernard Bros. the

name of some person, either real or fictitious, to whom the car would be invoiced and in whose name an application for a certificate of title would be executed; an invoice was delivered with each car which showed only the manufacturer's list price as the sales price thereof; and that the car, and the invoice bearing the name supplied by the purchaser, would then be delivered to the purchaser for the agreed cash consideration. Each such car was then offered for sale by the ultimate dealer-purchaser as a "like-new" used car, i. e., a car showing less than 100 miles of use.

The amount of the bonus which the witnesses testified they had paid to the corporation through one of defendants, Mr. Smith or Adelaide Locke Adsit, Bernard Bros. cashier and bookkeeper, varied with the different transactions. The government's evidence with respect to the 103 identified new cars tended to prove that cash "bonuses" therefor aggregating a minimum amount of $34,-108.06 had been paid in 1948 to agents of Bernard Bros. Agent Sharp testified that his inspection of the Bernard Bros. books revealed that all cash bonuses were systematically excluded from the recorded sale price of each car.

The government's case was concluded by the testimony of William Ruggaber, an employee of the Bureau of Internal Revenue. Ruggaber was present in court and heard the testimony of the various "bird-dog" and used-car dealer witnesses. From that testimony and the exhibits in evidence Ruggaber prepared a summary containing his computation of the amount of the cash bonus received by officers and employees of Bernard Bros. upon each of the 103 transactions. Over defendants' objection, a copy of that summary was given to each juror as Ruggaber testified as an expert witness to his evaluation of the primary evidence and the mechanics of his preparation of the summary. After the witness had testified, the summary prepared by him was admitted in evidence as an exhibit and given to the jury, over defendants' fur-ther objection, for use in their deliberations.

The major contentions now asserted against the judgment arise out of the summarized procedural aspects of the trial.

A major contention urged by defendants for reversal of the judgment is premised upon the asserted error of a ruling related to the admissibility and use of evidence. As the various "bird-dog" and used-car dealer witnesses testified to transactions and conversations with one, or more, of defendants, Charles Bernard or Mrs. Adsit, admission of the testimony was limited to the particular person to whom it pertained. Near the close of its case, the government moved that such testimony be admitted against all of the parties named in the indictment upon the theory that the evidence tended to prove a common scheme or design between defendants, Charles Bernard and employees of Bernard Bros. to sell new cars for bonus prices, in the furtherance of which each party had acted as agent for each of the other parties. Over defendants' objection, the government's motion was allowed, and all of the evidence, with certain specific exceptions noted, was admitted as competent evidence against each of the defendants named in the indictment.

Defendants now assert that the trial court, by so ruling, permitted them to be convicted of conspiracy, a crime not charged in the indictment. That premise overlooks and misconstrues the theory upon which the government's motion was made and allowed by the court. In moving that evidence admitted as against the individual defendants be admitted as against all defendants, the government relied upon the principle of vicarious responsibility of all joint venturers for all acts done and statements made in furtherance of the object of the joint scheme or undertaking. As a preface to its ruling allowing the government's motion, the court said, in pertinent part:

"But the broad terms of the indictment would imply that there was

a common design or a common plan to defraud the government, with only one exception.

"There was very extensive cross-examination by counsel for the defendants. They examined into each and every area. The one exception was Mr. Walsh, as to one of defendants in this case.

"Under the circumstances, I feel that the motion of the Government at this time could not be construed to be taking the defendants by surprise, so that they did not have an adequate opportunity to cross-examine as to the various issues in the case; and I therefore hold that the testimony and the exhibits in each and every case, with the exception of those outlined will apply to all defendants in the case; and the motion of the Government is allowed."

In its charge to the jury on this phase of the case, the court said, in pertinent part:

"When men enter into an agreement for an unlawful end, they become agents for one another. What one does pursuant to the common purpose, all do, and declarations, statements or conversations by one in furtherance of the common design and during its continuance are competent against all.

"During the course of the trial, various testimony and exhibits were received in evidence only as to certain defendants, and you were instructed that such evidence was not then to be considered against any defendant to whom the evidence did not pertain. Later, near the close of the government's case you were instructed that such evidence, with certain exceptions, had been admitted as to all defendants and that you might consider such evidence as pertaining to all defendants.

"If you now find beyond a reasonable doubt from all the evidence in this case that there was a common plan or design to engage in a general course of corporate business transactions of the type shown by the evidence, you may consider all the acts [of each of the individual defendants as evidence pertaining to all.]

"On the other hand, if you find from all the evidence that such a common plan or design was not shown beyond a reasonable doubt then you will consider the acts and declarations of each defendant only as to him and not to any other defendant."

From our review of the record, it is apparent that we are dealing in this phase of the case with a question of the admissibility of evidence only, not one of any amendment of the substantive charge of the indictment. The evidence complained of was admitted by the court and submitted to the jury upon a theory of the vicarious responsibility of all joint venturers for all acts done and declarations made by each in furtherance of the joint undertaking. The question whether a common plan or design was proved beyond a reasonable doubt was properly submitted to the jury.

Authority for the ruling is found in Reistroffer v. United States, 8 Cir., 258 F.2d 379, 386–388; United States v. Pugliese, 2 Cir., 153 F.2d 497, 500; United States v. Olweiss, 2 Cir., 138 F.2d 798, 799–800, certiorari denied 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047. To the same effect is American Fur Co. v. United States, 2 Pet. 358, 364–365, 27 U.S. 358, 364–365, 7 L.Ed. 450. We find no analogy between the ruling in this case and the case of Stirone v. United States, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, upon which defendants' principal reliance is placed. There the indictment charged that Stirone had interfered with the movement of certain sand in interstate commerce by an act of extortion. When the government's evidence tended to prove that the statute of limitations barred prosecution for interference with the movement of sand, the court allowed the introduction of evi-

dence tending to prove interference with the interstate movement of steel manufactured by a steel mill constructed from the sand alleged in the indictment. In reversing the judgment of conviction, the Supreme Court held that the latter evidence related only to substantive acts not charged in the indictment, and that the admission of such evidence had the effect of permitting the government to amend the indictment against Stirone by the use of evidence.

We hold that the court's ruling admitting the evidence against all defendants was proper.

■ Error is assigned upon the admission by the court of numerous documents and books from the records of the used-car dealer witnesses. The exact contention of defendants upon this phase of the case, as embodied in their brief, defies precision of statement. Their apparent contention is that it was in some manner unjust and prejudicial to permit the Bernard Bros. books which were compact and well arranged to be contradicted by used-car dealer records and documents which were in some instances incomplete and, in part, inaccurate.

From time to time as the trial progressed, the purchase journal of Nichols, the "police books" of Park Motor Sales, Atlas Motors and Stoltz, stock cards of Park, envelopes kept by Atlas for each car purchased, invoices identified as having been issued by Bernard Bros., and cancelled checks and check stubs of several used-car dealer witnesses were admitted as exhibits. We do not deem it necessary to set forth in detail the description or trial history of each document. We have examined the foundation laid for the introduction of the documents in each instance, and we conclude that all were properly admissible as records made in the regular course of a business, 28 U.S.C. § 1732(a); Palmer v. Hoffman, 318 U.S. 109, 112–114, 63 S.Ct. 477, 87 L.Ed. 645; United States v. Wicoff, 7 Cir., 187 F.2d 886, 889, or as documents corroborating the oral testimony of witnesses.

Defendants argument, that some of these business record exhibits were demonstrated to be inaccurate in certain respects goes to the weight or credibility of the documents, not to any question of admissibility. As we observed in United States v. Wicoff, 7 Cir., 187 F.2d at page 889 "Title 28 U.S.C.A. § 1732 provides for the admissibility of books and records made in the regular course of business, but does not require that they be correct in all respects." Accordingly, we will devote further discussion of this phase of the case to only two of several specific contentions.

■ The court admitted the check stub records of Nichols. Gordon Nichols identified the stubs of checks written in the course of various transactions for the purchase of specific cars in 1948. These stubs, variously, showed that the checks were payable to cash or to one of the proprietors of Nichols. In addition, each stub upon which the government's case depends bore the written notation, "Gallagher". Mr. Nichols testified that the name of the "bird-dog" was regularly noted upon the stub of each check written for the purchase of an automobile from a "bird-dog"—that the notation, "Gallagher", upon each of the stubs introduced in evidence denoted that the check had been issued for the purchase of a car from Gallagher.

We hold that the check stubs and explanatory testimony were properly admitted in evidence, upon the foundation testimony that the stubs were regularly prepared in the conduct of Nichols' business. The circumstance of the placement of the notation, "Gallagher", upon particular stubs, and the necessity for explanatory testimony, affect the weight and credibility of the evidence, not the admissibility. Bodnar v. United States, 6 Cir., 248 F.2d 481, 482–483.

■ We conclude that defendants' contention against the admissibility of the "police books" of Atlas and Stoltz also lacks merit. Each of those books was kept pursuant to the provisions of an Illinois statute, (now I.R.S.1959, c. 95½,

Sec. 5–401), which required all car dealers to keep records containing sufficient information as to the identity of cars purchased and sold to aid law enforcement officials in the enforcement of the motor vehicle theft laws. Both Atlas and Stolz entered upon their "police books" the price for which each automobile had been purchased, in addition to the information which the statute required. The foundation testimony disclosed that the amount of the purchase price of each car was customarily recorded in the "police book" as a regular record entry. It is wholly frivolous to contend, as defendants do, that the character of such books as a record made in the regular course of a business is destroyed merely because more information was recorded therein than the State statute required.

The distinction between Hartzog v. United States, 4 Cir., 217 F.2d 706, and Bruce v. McClure, 5 Cir., 220 F.2d 330, upon which defendants principally rely in their argument against the admissibility of these records, is readily apparent upon reading the reported opinions in those cases.

We have examined the circumstances of the trial court's admission in evidence of the summary prepared by Ruggaber, and we hold that the admission of that summary was not error. The use of charts and summaries of voluminous records and testimony, as secondary evidence, has been approved in United States v. Johnson, 319 U.S. 503, 63 S.Ct. 1233, 87 L.Ed. 1546; Somberg v. United States, 7 Cir., 71 F.2d 637; Smith v. United States, 6 Cir., 239 F.2d 168, certiorari denied 353 U.S. 983, 77 S.Ct. 1281, 1 L.Ed.2d 1142; Corbett v. United States, 9 Cir., 238 F.2d 557, certiorari denied 352 U.S. 990, 77 S.Ct. 387, 1 L. Ed.2d 368; Blackwell v. United States, 8 Cir., 244 F.2d 423, certiorari denied 355 U.S. 838, 78 S.Ct. 49, 2 L.Ed.2d 50, among other cases. In Lloyd v. United States, 5 Cir., 226 F.2d 9, one of the cases upon which defendants principally rely, the court stated that admission of charts made by government agents summarizing the basic evidentiary facts is discretionary with the trial court and that the court's exercise of discretion in that regard can be reviewed only upon a clear showing of abuse and resulting prejudice to the accused person. Although the court there expressly disapproved the inclusion of certain conclusionary statements in summaries admitted in evidence, the reversal of the judgment was on other grounds. The court, expressly, did not decide whether the use of the charts was prejudicial error.

■ The Ruggaber summaries were admitted by the court as summaries of the primary evidence, only, and not as primary evidence within themselves. Examination of the record discloses that defendants were afforded full opportunity to cross-examine Ruggaber with respect to the summaries and his method of making the same. With respect to the testimony of Ruggaber, the court instructed the jury that his testimony was entitled to weight as evidence only to such extent as the jury should find that the primary testimony of other witnesses and the exhibits upon which his expert testimony was based was entitled to weight and credibility. With respect to the Ruggaber summaries, the court stated in its charge to the jury:

"Such exhibit has no independent value. If you choose to disregard as evidence all or a part of the testimony of any witness in this cause or do not accept the correctness of any document admitted into evidence, then you must likewise disregard so much of the summary as is based upon the testimony of such witnesses and such documents you decide so to disregard."

Those instructions meet all of the requirements for the use of such evidence as set forth in the cases above cited.

■■ Equally wanting in merit is the defendants' contention that the evidence was insufficient to sustain their conviction. Defendants' argument is premised principally upon the contention that the

*evidence tended to show only that "under-the-table" payments were received by various individuals, including defendants, but that there is a lack of proof that such "under-the-table" payments were ever received by the corporation. The court correctly charged the jury that monies received by officers and agents of a corporation in the sale of property offered for sale by the corporation is corporate income. Burger v. United States, 8 Cir., 262 F.2d 946, 955–956. It is immaterial that all or a part of that money may have been embezzled from the corporation by the person who received it as defendants suggest. Assuming, arguendo, that that contention is a fact, the money received was none the less corporate income. Burger v. United States, supra. The cases of Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833; Briggs v. United States, 4 Cir., 214 F.2d 699, and Davis v. United States, 6 Cir., 226 F.2d 331, upon which defendants rely are inapposite. Each dealt only with the question whether funds embezzled from a corporation, or received by an individual through extortion, constituted taxable income to the individual.

Upon the evidence the jury could find that defendants systematically omitted cash bonus payments from the Bernard Bros. books and from the 1948 corporation tax return in a wilful attempt to evade a substantial part of the income tax due for that year.

Defendants contend that the court erred in its charge to the jury and in its refusal to give certain instructions tendered by the defendants. We have examined the court's charge to the jury as a whole, and we conclude that the jury was correctly instructed. The charge, as a whole, is both complete and fair to the defendants.

That conclusion might well dispose of the whole of defendants' many contentions against the charge given, but we deem it advisable to mention briefly several specific points raised.

During the trial of the case the court permitted the use of grand jury minutes in questioning the witness, Edward Gallagher. In its charge, the court cautioned the jury that it might consider those questions and answers read from the grand jury minutes only in so far as they tended to impeach Gallagher. That statement was part of the charge to the jury relating to the impeachment of witnesses. A cautionary instruction was necessary in view of the use of the grand jury minutes and the charge given correctly stated the law.

The charge with respect to accomplice testimony was a correct statement of the law, United States v. Echeles, 7 Cir., 222 F.2d 144, certiorari denied 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739; Delvalley v. United States, 7 Cir., 88 F.2d 579, and was necessary to present the testimony of George Smith to the jury in proper perspective.

The charge given with relation to the fact that defendants did not testify was in compliance with the principles stated in Bruno v. United States, 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257, and was essentially identical to the instruction which we approved in United States v. Fleenor, 7 Cir., 162 F.2d 935.

The charge given with respect to the weight to be given to character witness testimony is essentially identical to the charge which we approved in United States v. Echeles, 7 Cir., 222 F.2d 144, certiorari denied 350 U.S. 828, 76 S.Ct. 58, 100 L.Ed. 739. We distinguish United States v. Semeniuk, 7 Cir., 193 F.2d 508, upon authority of the Echeles case.

In summary, upon consideration of the court's charge to the jury as a whole, we find that the jury was correctly instructed as to the elements of the offense charged, as to the rules for the jury's consideration of, and weight to be given to, the evidence, as to the respective functions of jury and trial judge, as to the use of the evidence against the various defendants and as to the proper respective positions of the government and the defendants with relationship to the burden of proof and the presumption of innocence. We find the court's charge to

have been eminently fair to the defendants and complete in every necessary respect. We therefore reject all contentions of defendants with relation to the propriety of the court's charge, and the rulings upon tendered instructions.

■ Finally, defendants contend that written reports made by agent Sharp to the government reveal that the affairs of the witnesses, Smith, Kaziny and Gallagher, were under investigation by the Bureau of Internal Revenue simultaneously with the investigation of the affairs of Bernard Bros. By their supplemental brief, defendants contend that the court's ruling denying them access to such reports prevented them, on cross-examination of Sharp, from exposing and developing any promise of leniency, or other relationship, between Sharp and the government, on the one hand, and Smith, Kaziny and Gallagher, on the other.[2]

In United States v. Killian, 7 Cir., 275 F.2d 561, Pet. cert. pend'g, we held that the Jencks Act, 18 U.S.C. § 3500, requires the production only of such written statements and reports as are related to the subject of a witness' direct testimony. The fact and the timing of any investigation of Smith, Kaziny and Gallagher have no relevant relationship whatsoever to Sharp's direct testimony. The demand for production of the statements in question was properly denied.

This is not a case comparable to United States v. Sheer, 7 Cir., 278 F.2d 65, or United States v. Berry, 7 Cir., 277 F.2d 826, in which there was a failure to produce for the court's examination statements and reports made by government witnesses which related to the subject matter of the issues of the trial.

We have carefully considered the many other contentions, and subcontentions, of defendants' shot-gun approach to their attack upon the judgment of conviction. We have concluded that all are without merit, and that further specification or discussion thereof would only lengthen an already overlong opinion.

The judgment is reversed as to Charles E. Bernard. The judgment as to the defendants, Leonard M. Bernard and James B. Jackson is affirmed.

## On Petition for Rehearing.

■ We have considered the decision and opinion of the United States Supreme Court in Clancy v. United States, 81 S.Ct. 645, which is cited by defendants in their petition for rehearing. In the Clancy case, the defendants' demand that memoranda prepared by government-agent witnesses be produced for their inspection pursuant to the provisions of the Jencks Act, 18 U.S.C. § 3500, was denied by the trial judge because the written memoranda in question had not been made "contemporaneously" with the conversations therein reported. The Supreme Court reversed a judgment of conviction upon the narrow ground that the trial judge had employed an improper standard of decision in his ruling upon the Jencks Act request, inasmuch as that Act does not require, as a condition for compelling their production, that statements by government witnesses be made contemporaneously with conversations and interviews therein reported.

2. After Sharp had testified on direct examination, defendants invoked the Jencks Act, 18 U.S.C. § 3500, and demanded that all written statements and reports made by Sharp and related to his Bernard Bros. investigation be produced for their inspection and use. The trial judge ordered that all such statements and reports be produced by the government for inspection by the court *in camera*. See United States v. Killian, 7 Cir., 275 F. 2d 561, Pet. cert. pend'g. After his *in camera* inspection of the reports, the trial judge ordered that certain reports, and parts of other reports, be delivered to defendants. The court then ordered that all other statements and reports to which defendants had been denied access be sealed in order that they might be available for any appeal.

Through oversight, one of two envelopes containing such reports was not sealed when the record was transmitted to this court. Defendants' examination of the contents of that unsealed envelope forms the basis for their Jencks Act argument.

In the case at bar the trial court employed the correct statutory standard in his rulings upon defendants' request for production of written statements and reports made by agent Sharp. The Clancy decision has no application here.

Although we did not so expressly state in our opinion in this case, government's Exhibits 84-A and 84-C have been examined by the court. Exhibit 84-A consists of the complete, unexcised report of internal revenue agents which was signed by Sharp. Exhibit 84-C consists of the portions which were excised by the trial judge after his *in camera* examination of that complete report. From our examination of those exhibits, we conclude that the materials contained in Exhibit 84-C were properly excised from Sharp's report prior to the submission of that report to defendants for their inspection.

The petition for rehearing is denied.