UNITED STATES of America,
Plaintiff-Appellee,

v.

Richard D. DANA, Defendant-Appellant.

No. 18966.

United States Court of Appeals,
Seventh Circuit.

Feb. 3, 1972.

Stanley P. Gimbel, Franklyn M. Gimbel, Milwaukee, Wis., for defendant-appellant; Gimbel, Gimbel & Boyle, Milwaukee, Wis., of counsel.

David J. Cannon, U. S. Atty., Steven C. Underwood, Richard E. Reilly, Asst. U. S. Attys., Milwaukee, Wis., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, and KILEY and KERNER,[1] Circuit Judges.

KILEY, Circuit Judge.

Defendant Dana appeals from his conviction by a jury on each of five counts of an indictment charging willful attempts to evade income tax for the years 1962–66, in violation of 26 U.S.C. § 7201.

The evidence most favorable to the government shows that during the years in question Dana was a salesman for Inland Container Corporation and sold packaging materials to Western Printing Company (Western). During this same time he also operated a business known as Display Products (Display) which sold coin displayers to Western.

Mielke, the production manager of Western, was a good friend of Dana. They devised the following scheme: Mielke, for Western, would order mer-

---

1. Judge Kerner heard oral argument but did not participate in the adoption of this opinion.

chandise from Display. Although Display would make no delivery or only part delivery of the merchandise ordered, it would bill Western for the full amount of the order. Mielke would then approve the bills and the issuance of checks to Display in payment of the bills. They agreed to divide 60% of the proceeds of the Western checks equally between them, and Dana promised to use the remaining 40% to pay their respective income taxes.

Dana claims that the court erred in allowing the government to introduce summaries of its evidence; by failing to give certain instructions; by making prejudicial comments; and by erroneously ruling with respect to examination of witnesses.

### I.

In presenting its case to the jury the government relied essentially on the testimony of Mielke, and on the inflated invoices and Western checks issued for the spurious orders. The government also introduced summaries of the evidence for the 1962–66 tax years. The summaries were prepared for the jury by the government witness Kabaker.

We see no merit in Dana's contention that the district court abused its discretion in admitting Kabaker's summaries of unreported income into evidence. Dana argues that the exhibits do not contain proper references to the evidence on which the summaries are based, and that he was denied the "opportunity to voir dire" Kabaker before his summaries were admitted. We are not persuaded by the argument.

There were four summaries pertaining to Dana's tax liability for the year 1962. The first is captioned: *Summary of Evidence of Unreported Receipts from Western Printing and Lithographing Company, Unreported Purchases and Unreported Expenses of Richard D. Dana Doing Business as Display Products*

*Company—to August 31, 1962.* It has several columns showing the dates, numbers, and the amounts of invoices billed to Western. It also lists the numbers and amounts of checks issued to Display in payment of the invoices, with appropriate references to corresponding exhibit numbers. A second summary contains similar data from September through December 31, 1962.[2]

The third summary is captioned: *Summary of Evidence of Merchandise Purchases by Display Products Company for 1962.* It contains five columns listing the date, amount and number of the Western checks issued in payment to Display. It also sets out the name of the payee and the exhibit numbers corresponding to the transactions.

The fourth summary for 1962 is entitled: *Computation of Taxable Income for the Year 1962.* It lists Dana's reported and unreported taxable income, with reference to the exhibit number of the original 1962 tax return and the preceding summaries showing the total unreported receipts for 1962. It computes Dana's additional income tax liability for 1962 by taking the difference between the total corrected income tax due and the tax actually reported.

The summaries for the years 1963, 1964, 1965 and 1966 are essentially similar to those pertaining to 1962. The respective columns give the dates, check numbers, amounts and pertinent exhibit numbers. The tax computations for the later years are also analogous to those in the 1962 summary.

■■ This court has approved the use of summaries such as those prepared and testified to by the government witness Kabaker. United States v. Tolbert, 406 F.2d 81, 85 (7th Cir. 1969); United States v. Bernard, 287 F.2d 715, 722 (7th Cir. 1961), cert. denied, 366 U.S. 961, 81 S.Ct. 1921, 6 L.Ed.2d 1253 (1961). And the district court's ruling here can be reviewed "only upon a clear showing of

2. On August 31, 1962, Display Products Co., which had been operated as a sole proprietorship, became a corporation known as Display Products Ltd. The separate summaries of unreported receipts from Western to Display in 1962 reflect this change in status.

abuse and resulting prejudice" to Dana. Lloyd v. United States, 226 F.2d 9, 16 (5th Cir. 1955).

Kabaker's typewritten summaries, in our opinion, must have been of material aid to the jury in its deliberations for purposes of recalling and identifying source exhibits and for classifying the underlying evidence presented at the trial. The exhibit references in the summaries identifying the sources of the evidence were guards against the inherent danger of conviction upon summaries rather than upon primary evidentiary proof. Lloyd v. United States, at 17. The summary captions and source references were adequate to enable the jury to easily determine their accuracy by cross checking to the underlying exhibits. United States v. Tolbert, *supra*.

No prejudice is shown by Dana as a result of the court's ruling against the claimed right to voir dire examination of Kabaker. The extensive cross-examination of Kabaker tested the proper weight to which the summaries were entitled. And the summaries were further tested by the court's clear instruction against their prejudicial use. The court told the jury that the summaries should be considered "solely" as summaries, and that they did not per se constitute evidence. It instructed the jury that the summaries had no "independent value," were weighty only in so far as they "reflect[ed] accurately the primary evidence" and should be disregarded in so far as they did not reflect the truth of the underlying evidence.

## II.

■ The court refused Dana's proffered instruction that monies received by officers and agents of a corporation from its sales constituted corporate income even if the person receiving the money embezzled it and the money was not deposited in any corporate bank account. We think, however, that the court's refusal to give the instruction could reasonably have been prompted by a fear of confusing the jury, and was not erroneous.

This court did approve a similar instruction in United States v. Bernard, 287 F.2d 715, 723 (7th Cir. 1961). The question there, however, was whether defendants had fraudulently reported corporate income. They had contended that corporate money they took had not been received by the corporation. Here Dana is not charged with evading income tax of Display.

Dana also complains that the court erred in refusing to give his proffered instructions Nos. 4, 5 and 18 covering, respectively, "willful attempt . . . to defraud the government," the distinction between civil and criminal liability for failure to pay income taxes, and the effect of a taxpayer's "honest doubt" in a prosecution for tax evasion.

■■ Dana was entitled, of course, to an instruction upon his theory of defense. United States v. Vole, 435 F.2d 774, 776 (7th Cir. 1970). But we think that the district court's instruction on "specific intent" effectually covered the essence of refused instruction No. 4 [3] on willful attempt. True, the court did not emphasize, as Dana's instruction did, the term "attempt"—but that was unnecessary. The court could have decided with reason that the rejected instruction overemphasized that term, to suggest a confusing and erroneous implication, *i. e.*, if Dana *succeeded* in evading payment, his success obviated the idea of guilt for an "attempt." O'Brien v. United States, 51 F.2d 193, 197 (7th Cir. 1931); *see also* Spies v. United States, 317 U.S. 492, 498–499, 63 S.Ct. 364, 87

---

3. The instruction given by the court states, *inter alia*, that the government must prove beyond a reasonable doubt that Dana "wilfully attempted to evade" the taxes in question; and that "the only way you have of arriving at the intent of defendant . . . is . . . . to take into consideration all the facts and circumstances . . . and determine . . . whether it was the intent of the defendant . . . to defraud the government of the tax which he knew was due from him."

L.Ed. 418 (1942); Guzik v. United States, 54 F.2d 618, 619 (7th Cir. 1932).

With reference to instruction No. 5 there was evidence at the trial that Dana's accountant had received a letter from the Wisconsin Department of Taxation concerning Dana's failure to report commissions from Display in his 1963 state tax return. Dana thereafter filed amended federal income tax returns for the years 1963 and 1964, but prior to any contact by the IRS. He argues that this evidence required the district court to give his proffered instruction No. 5 that whether "[Dana] may or may not have settled his civil liability, for the payment of taxes . . . to the United States . . . is not considered . . in determining the issues [in the criminal case] . . . except" to the extent that it bears on the question of intent.

We think the instruction [4] which was given adequately covered the point, and see no error in the rejection of the proffered instruction. Accordingly, Spies v. United States, 317 U.S. 492, 500, 63 S.Ct. 364, 87 L.Ed. 418 (1943), and Hill v. United States, 363 F.2d 176 (5th Cir. 1966), cited to this point by Dana, are inapposite.

Dana's proffered instruction No. 18 concerned the defendant's "honest doubt" as to the taxability or nontaxability of certain commissions of Display, which had not been reported originally but which had been subsequently reported in the amended returns. The court rejected the instruction as unnecessary surplusage. We agree that it was not needed, since its subject matter was covered by another instruction given. The given "specific intent" instruction precluded any finding of guilty "because of mistake

or accident or other innocent reason." And the court further told the jury that the "necessary element of willfulness and specific intent to evade . . . cannot be inferred from a mere understatement of income."

In instructing the jury on intent the court deleted certain "general illustrations" pertaining to examples of conduct pointing to intent to evade taxes. Dana asserts error in the trial court's failure to give the entire instruction which was based on language from Spies v. United States, 317 U.S. 492, 63 S.Ct. 364, 87 L.Ed. 418 (1943). The trial court decided that since the illustrations were not based on evidence in the case, he would not give them. We find no abuse of discretion, or other error, in the court's decision. The court in *Spies* does not require that the illustrations be given. And the illustrations requested by Dana could have confused the jurors about the issues before them. Furthermore, Dana's counsel discussed the various illustrations in jury argument. We find no error in the court's failure to give the illustrations.

### III.

During cross-examination the government witness Kabaker was questioned about "cash . . . or check payments" made by Dana to Mielke and not reflected in the summaries. Dana's counsel asked Kabaker whether his summaries would be incorrect if he had checks payable to Mielke which were not "considered on the schedules." The court then inquired, "Are there any checks . . . in existence that you know of that aren't now in this courtroom?" The prosecutor responded, "De-

---

4. The court told the jury, *inter alia*:
   . . . The filing of an amended return does not constitute evidence in any manner that the original returns filed for the same years were false and untrue. In other words, you are instructed that the filing of the amended return by the Defendant cannot be considered evidence of an attempt to evade and defeat taxes at the time the Defendant filed the original returns.

If you find that the amended returns were filed at a time that the Defendant was not under compulsion, attributable to an assertion of deficiency or threat of prosecution, then you may consider the filing of the returns as evidence relating to the defendant's intent, and may draw whatever inference you might reasonably find as to the ultimate issues in this case.

fendant hasn't produced any, and we don't know of any." Dana's counsel then moved for mistrial on the Fifth Amendment ground that Dana's right to remain silent was violated because of the intimation that Dana had a duty to produce evidence against himself. He requested a cautionary instruction and the court immediately addressed the jury that he wanted "to again emphasize . . . that a defendant has no duty to come forth with any evidence under our system of law." We think the court's instruction was effective to remove any prejudice Dana could have suffered from the incident.

■ Subsequently, during rebuttal argument, the prosecutor asked rhetorical questions of, and made statements to, the jury[5] with respect to the checks referred to above. The argument was in response to jury argument by Dana's counsel concerning checks Dana had produced to show that Kabaker did not credit him with disbursements to Mielke and accordingly the Kabaker summaries should not be accepted by the jury as a truthful computation of Dana's income.

We see no denial of Dana's Fifth Amendment right by the court or prosecutor in the circumstances here. In support of his case Dana had produced checks which he had passed to Mielke and which were not in the government's possession or case. His counsel put questions about them to Kabaker which led to the clearly spontaneous response of the prosecutor. The court promptly cautioned the jury, as counsel requested. And Dana's counsel's jury argument justified the prosecutor's response. *See* United States v. Blassick, 422 F.2d 652, 654 (7th Cir. 1970).

### IV.

■ Nor do we see an abuse of discretion in the court's refusal to grant Dana permission to take the stand for the limited purpose of impeaching certain testimony by Mielke against him, but without the risk of being cross-examined as to incriminatory matters. The court properly ruled that any testimony by Dana with respect to his defense would waive his Fifth Amendment right as to all other relevant facts. Johnson v. United States, 318 U.S. 189, 195, 63 S.Ct. 549, 87 L.Ed. 704 (1943); Nash v. United States, 405 F.2d 1047, 1054 (8th Cir. 1969).

■ Finally, we deem it unnecessary to discuss Dana's claim that the court improperly limited recross-examination of Mielke. Suffice to say we see no undue limitation in the court's confining the recross-examination to the redirect, and no prejudice to Dana from the ruling.

Affirmed.

---

5. "Where are the checks? Don't you think Defendant would have produced the checks, if he had them . . . of course he would have. They are not going to rely on the fact that they don't have to come forward to produce any evidence. They have started the ball rolling by producing these. . . . He could have gone to the bank if he doubted what we had. He has subpoena powers . . . [for] all the records . . . there are no more checks."