**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William O. RADSECK,
Defendant-Appellant.**

No. 82–2390.

United States Court of Appeals,
Seventh Circuit.

Argued May 10, 1983.

Decided Sept. 28, 1983.

Rehearing and Rehearing En Banc
Denied Dec. 6, 1983.
Certiorari Denied Feb. 21, 1984.
See 104 S.Ct. 1291.

234

Daniel E. Nabke, Ehlenbach & Nabke, New Berlin, Wis., for defendant-appellant.

Lloyd B. Monroe, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before ESCHBACH and COFFEY, Circuit Judges, and CAMPBELL, Senior District Judge.*

ESCHBACH, Circuit Judge.

Appellant William O. Radseck was charged with five counts of mail fraud, 18 U.S.C. § 1341, three counts of conspiracy to commit mail fraud, 18 U.S.C. § 371, four counts of affecting interstate commerce by extortion, 18 U.S.C. § 1951, and three counts of attempted income tax evasion, 26 U.S.C. § 7201. After a jury trial, he was acquitted of two of the mail fraud charges, and convicted of the rest of the charges. Radseck was fined $5,000 and sentenced to four six-year sentences for his extortion convictions, and nine two-year sentences for his other convictions. All sentences are to run concurrently. He takes this appeal pursuant to 28 U.S.C. § 1291. The appellant claims as error the admission of hearsay testimony of a co-conspirator, the admission of testimony concerning earlier fraud attempts, and the admission of certain government exhibits concerning the tax evasion charges.

For the reasons given below, we find no merit to these claims and affirm the convictions.

## I.

### A. The Co-conspirator Testimony

Radseck was the Indiana claims manager for the Milwaukee Mutual Insurance Company ("Milwaukee Mutual"). In 1978, Radseck met with Larry Hiner, a partner in the Round Construction Company ("Round"), and promised Hiner insurance work in exchange for a fifteen-percent kickback of the gross amount realized on Milwaukee Mutual work. After discussing the proposal with his partner, William Casassa, Hiner agreed to pay the kickbacks and Round began receiving work from Radseck. Hiner and Casassa continued their arrangement with Radseck until March 1979. Both Hiner and Casassa testified for the government as unindicted co-conspirators.

Hiner testified extensively about the kickback arrangement between Round and Radseck. The government then called Casassa, who testified that Hiner had related to him the details of Radseck's original proposal. Casassa's testimony concerning those initial discussions, to which he was not a party, was admitted pursuant to Fed. R.Evid. 801(d)(2)(E), the co-conspirator exception to the hearsay rule. "A statement is admissible under this rule only when the government has established by a preponderance of the evidence, independent of the statement itself, that (1) a conspiracy existed, (2) that the defendants and the declarant were members of the conspiracy, and (3) that the statement was made in the course of the conspiracy." *United States v. Xheka,* 704 F.2d 974, 985 (7th Cir.1983); *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978). The preliminary determination that the government has in fact estab-

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, sitting by designation.

lished a conspiracy is made by the trial judge pursuant to Fed.R.Evid. 104(a). *Santiago, supra,* 582 F.2d at 1130–31, 1133.

■ The admission of Casassa's testimony was preceded by an extended colloquy between the court and the attorneys for both sides. The discussion, which covers twelve pages of the trial transcript, concerns the requirements of *Santiago,* and the testimony already in evidence that could support an independent finding of conspiracy. All the parties to this discussion correctly identified the burden of proof applicable to the preliminary conspiracy determination as a showing by the preponderance of the evidence. In response to the objection to the hearsay testimony, the trial judge stated, "The Court must determine if by a preponderance of the evidence the declarant and the Defendant were members of a conspiracy when the hearsay statement was made and that the statement was in furtherance of the conspiracy." More discussion followed, during which both attorneys also referred to the preponderance-of-the-evidence standard. However, in deciding to admit the testimony, the trial judge concluded that he was "convinced certainly to the extent of a prima facie case having been established, that there was a conspiracy . . . ." The appellant now complains of this isolated reference to a prima facie standard.

Because the trial judge discussed *Santiago* at length, and because the judge and the attorneys referred to the preponderance-of-the-evidence standard at all times except this one instance, we are convinced that the trial judge understood and used the correct standard to evaluate the evidence of a conspiracy. Hiner's testimony is sufficient to establish a conspiracy, and although the appellant attacks Hiner's credibility, we must defer to the trial judge's decision crediting Hiner's testimony.

## B. Prior Similar Acts

■ The government introduced evidence that Radseck had also attempted to make a percentage kickback deal with Vernon Ayers, an insurance adjuster. Radseck approached Ayers in 1971, 1972, and again in 1976 with proposals similar to the one he offered Round Construction. The last proposal was made in the presence of Ted Biberstine, Ayers' employee. Both Ayers and Biberstine testified for the government. The appellant contends that the admission of their testimony was erroneous, because the testimony concerned acts that were both dissimilar to, and remote in time from, the conspiracies charged.

■ Under Fed.R.Evid. 404(b), "evidence of prior similar crimes or acts [is] admissible if such acts have a 'substantial relevance' to an issue other than a general criminal character and propensity to commit crime." *United States v. O'Brien,* 618 F.2d 1234, 1238 (7th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66 L.Ed.2d 73 (1980); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). Evidence of other crimes or misconduct is relevant if it bears upon intent, knowledge, or absence of mistake or accident. *United States v. Peskin,* 527 F.2d 71 (7th Cir.), *cert. denied,* 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1975); *United States v. Jones,* 438 F.2d 461 (7th Cir.1971). Here, the testimony of Ayers and Biberstine was admitted solely for the purpose of showing intent and plan, and the jury was so instructed. Where such evidence is introduced to show intent, "the degree of similarity is relevant only insofar as the acts are sufficiently alike to support an inference of criminal intent." *United States v. O'Brien, supra,* 618 F.2d at 1238; *United States v. Weiler,* 385 F.2d 63 (3d Cir.1967). The testimony of Ayers, corroborated by Biberstine, was that Radseck had solicited kickbacks in return for the receipt of Milwaukee Mutual's business. With Ayers, as with others Radseck solicited, Radseck also spoke of cheating the insurance company by inflating bills. These similarities are enough to support admissibility on the issue of intent. The prior acts need not be duplicates of the ones for which the defendant is now being tried. *United States v. O'Brien,* 618 F.2d 1234 (7th Cir.), *cert. denied,* 449 U.S. 858, 101 S.Ct. 157, 66

L.Ed.2d 73 (1980); *United States v. McPartlin,* 595 F.2d 1321 (7th Cir.), *cert. denied,* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).

Further, we do not agree that the acts testified to by Ayers and Biberstine were too temporally remote to be admissible. Radseck, whose solicitations of Ayers ended in 1976, was charged with conspiracies that began in 1976 and 1977. In *United States v. Lea,* 618 F.2d 426 (7th Cir.), *cert. denied,* 449 U.S. 823, 101 S.Ct. 82, 66 L.Ed.2d 25 (1980), we held admissible testimony that implicated the defendant in a kickback scheme that had occurred some ten to twelve years earlier than the one for which he was then on trial. *See also O'Brien, supra,* 618 F.2d 1234 (events testified to occurred two years earlier); *McPartlin, supra,* 595 F.2d 1321 (events testified to occurred four years prior to those charged). In the instant case, the solicitations of Ayers ended in the very year a conspiracy with one Loren Rosander, an insurance adjuster, began. We therefore hold that the admission of the prior-acts testimony of Ayers and Biberstine was not erroneous.

### C. The Tax Exhibits

In its presentation of the attempted income tax evasion charges, the government relied on several exhibits which it offered in connection with the testimony of an Internal Revenue Service Agent, Arthur Young. The exhibits consisted of summaries of the evidence by which the government had concluded that Radseck had unpaid tax liabilities for the years 1977, 1978, and 1979, and computations by Agent Young using the "expenditures" method of income reconstruction—an accounting method. These exhibits purported to show how the government arrived at its conclusion that Radseck had attempted to evade payment of his taxes.

The exhibits used in this case are a hybrid form of evidence. On the one hand, they are comprised in part of the kind of tabulations contemplated by Fed.R.Evid. 1006, as when they summarize numerous independent financial transactions already in evidence through previous testimony and other exhibits. On the other hand, they are accompanied by the testimony of an expert, an agent of the Internal Revenue Service, who has prepared the exhibits and drawn certain conclusions, through the use of one or several income reconstruction methods, about the defendant's liability for unreported income.

We have approved the use of exhibits such as the ones admitted here where the government witness who prepared the exhibit was available for cross-examination, and the jury was instructed that the exhibits have no independent evidentiary weight and are to be disregarded insofar as they do not comport with other evidence. *United States v. Esser,* 520 F.2d 213 (7th Cir.), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1975); *United States v. Dana,* 457 F.2d 205 (7th Cir.1972); *United States v. Tolbert,* 406 F.2d 81 (7th Cir.1969); *United States v. Bernard,* 287 F.2d 715 (7th Cir.1961); *United States v. Doyle,* 234 F.2d 788 (7th Cir.1956). We have also required that the exhibits be organized so the jury might easily correlate the parts that purport to be summaries with the evidence underlying those summaries. *Dana, supra,* 457 F.2d at 208; *Tolbert, supra,* 406 F.2d at 85.

Notwithstanding these requirements, the appellant states that the government's "expenditures" exhibits should not have been admitted. First, he claims the exhibits were inaccurate because they did not incorporate certain evidence, available to the government through its other exhibits and files, that would have negated some of the claimed tax liability. Second, he claims the exhibits were conclusory because they reflect the assumption that Radseck had no cash on hand, a fact which the appellant contends was not in evidence. We will discuss these concerns *seriatim.*

■ In the "expenditures" method of income reconstruction, IRS agents attempt to match the defendant's available sources of funds (salary, sales of assets, etc.) with expenditures and savings during a fiscal year. If expenditures and savings grossly exceed

funds, agents conclude that the defendant had available unreported sources of income. During cross-examination of Agent Young, it was established that the government should have credited Radseck with income from a $250 inheritance and a $2,356 tax refund in 1977, a $1,700 tax refund in 1978, and a $6,000 return from the sale of a boat in 1979. It was also disclosed that the 1978 exhibit incorrectly included $2,766 as both a personal expenditure and an increase in assets.[1] The appellant's contention that these inaccuracies rendered the exhibits inadmissible, however, reveals a misapprehension of our requirements. While some courts have specified that the trial judge conduct a hearing to determine the accuracy of the exhibits, see, e.g., United States v. Conlin, 551 F.2d 534 (2d Cir.), cert. denied, 434 U.S. 831, 98 S.Ct. 114, 54 L.Ed.2d 91 (1977), we require only that the defendant be allowed to thoroughly test the exhibits through cross-examination of the witness who prepared them, and that the jury be instructed as to their proper use. These requirements are checks against the prejudicial use of erroneous summary charts.[2] In the instant case, the trial court was advised before the exhibits were admitted that they were based on evidence already before the jury. All of the inaccuracies of which the appellant complains were disclosed during the extensive cross-examination of Agent Young, and acceded to by the government in its closing argument. Further, the jury was repeatedly cautioned by the court that a summary "does not constitute evidence,"

that "it is for the jury to determine whether the evidence supports the summary," and that the exhibits were "admitted to assist [the jury] in evaluating the other evidence." The admission of exhibits containing summaries under these circumstances complies with the decisions of this court, and we find no error.[3]

■ Finally, the appellant states the exhibits were inadmissible because they contained assumptions by Agent Young that rendered the exhibits conclusory. Specifically, he complains that the assumption that he had no increase in cash on hand, reflected in line one of each of the exhibits in question, was not based on facts in evidence. Radseck and his wife both testified that they had accumulated, through savings over the years, a large amount of cash in a dresser drawer in their home.

We note initially that the zero figure under "increase in cash on hand" is actually helpful to the appellant. Under the "expenditures" method, increases in assets are added to personal expenditures. The total is then compared with the defendant's source of funds. It is, therefore, helpful to a defendant if the figures in the "increase in assets" section is low, in order that all increases, coupled with expenditures, do not exceed the defendant's source of funds. We will assume, therefore, that the appellant's real objection is to line eighteen, entitled "decreases in cash on hand," which also shows a zero figure.

1. The appellant's most serious contention, that a $48,000 return from the sale of two rental properties (which would have reduced his tax liability for 1978 to zero) was not reflected in the government's computations, is not supported by the record. Agent Young testified on redirect that the money from the sale of those properties was included on lines twenty-four and twenty-six of the 1978 exhibit.

2. We note that this is not a case where exhibits, properly introduced, are subsequently disclosed to be seriously inaccurate or where the government willfully introduced exhibits it knew presented a distorted picture of the defendant's financial situation. Agent Young testified that the errors in the expenditures exhibits in no way affected the accuracy of the other

summaries which were the government's primary method of proof, nor did the failure to include certain sums change his conclusion that, even by the expenditures method, Radseck owed unpaid taxes for the years in question. Finally, the government made no attempt to conceal the errors, and referred to them in its closing argument to the jury.

3. While it might have been better as a procedural matter if the lines on the exhibits were more clearly correlated with the underlying evidence, see United States v. Dana, 457 F.2d 205, 208 (7th Cir.1972), we feel that the sources for the computations that appeared in the exhibits were well enough explored that the jury could not have been misled.

Agent Young testified that his conclusion that Radseck had no increase in cash on hand (and therefore no decrease was shown) was based on "all the evidence and oral testimony and from the exhibits from the trial." Further, Special Agent Clelland, who supervised the preparation of the exhibits, testified that in his experience in investigating thirty-five to forty attempted income tax evasion cases, people who have five bank accounts, thirteen savings and loan accounts and two brokerage accounts do not keep substantial amounts of cash on hand. The inference that Radseck did not keep such cash in his home was a permissible one. Agent Young's and Agent Clelland's qualifications to draw conclusions based upon the evidence were amply established at trial and are not questioned here. As we have noted before, "[t]he nature of a summary witness's testimony requires that he draw conclusions based upon the evidence presented at trial." *United States v. Esser,* 520 F.2d 213, 218 (7th Cir.), *cert. denied,* 426 U.S. 947, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1975).

That Radseck later testified he kept large amounts of cash in his home is of no import in the context of whether the exhibits were admissible. The government was under no obligation to include the appellant's version of the facts in its exhibits. *Myers v. United States,* 356 F.2d 469 (5th Cir.), *cert. denied,* 384 U.S. 952, 86 S.Ct. 1572, 16 L.Ed.2d 548 (1966); *United States v. Shavin,* 320 F.2d 308 (7th Cir.1963); *Flemister v. United States,* 260 F.2d 513 (5th Cir.1958). The jury was admonished by the court that the exhibits purported to be only "the Government's submission of the Government's theory of what the Government's case shows up to this point." The proper weight to be accorded the conclusions of the IRS agents was a question for the jury to decide.

## II.

For the reasons set forth above, the appellant's convictions are affirmed.