TANGENT DEVELOPMENT CORP., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Tangent Dev. Corp. v. Commissioner
Docket No. 38375-87
United States Tax Court
T.C. Memo 1990-537; 1990 Tax Ct. Memo LEXIS 591; 60 T.C.M. (CCH) 1002; T.C.M. (RIA) 90537; October 16, 1990, Filed *591 Decision will be entered for the respondent. Kenneth Guenther (an officer), for the petitioner. Brenda Fitzgerald, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined deficiencies of $ 1,762.80 and $ 2,856.52 in petitioner's Federal income taxes for 1983 and 1984, respectively. Respondent also determined additions to tax of $ 881.40 and $ 1,428.26 for fraud under section 6653(b)(1) and claimed an amount under section 6653(b)(2) on the full amount of the deficiencies. Unless otherwise indicated, all section references *592 are to the Internal Revenue Code, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. The deficiencies in issue resulted from disallowance of deductions for net operating losses carried forward from earlier years and disallowance of depreciation claimed. Petitioner did not present any evidence that it was entitled to the deductions it claimed. Rather, petitioner relied on various objections to procedures used by respondent and by the Court. Those procedural objections will be discussed after our findings of fact and review of the evidence of fraud. FINDINGS OF FACT Some of the facts were orally stipulated by the parties. Other facts have been deemed stipulated for purposes of this case in accordance with Rule 91(a). The stipulated facts are incorporated in our findings by this reference. Petitioner is an Oregon corporation that had its principal place of business in Portland, Oregon, at the time it filed its petition. Kenneth Guenther (Guenther) was the sole shareholder and president of petitioner. Petitioner was in the business of renting residential real estate located at 3707 S.W. 52n *593 d Place, Portland, Oregon, and investments. Guenther also owned residential rental property individually. Guenther's residence was located at 1029 S.W. Tangent, Portland, Oregon. For years prior to and including the years in issue, petitioner's tax returns were prepared by Elmer Liebert (Liebert), a certified public accountant. Liebert also prepared Guenther's individual income tax returns. Guenther provided to Liebert the information from which Liebert prepared tax returns for Guenther and petitioner. The information provided by Guenther to Liebert included handwritten schedules prepared by Guenther, on which Guenther listed and categorized various items of income and expenses. Liebert went over the items and reclassified some of them, such as repairs expense that Liebert classified as capital items on which depreciation was to be taken. Liebert did not, however, audit petitioner or examine receipts supporting the schedules prepared by Guenther. Liebert did not determine whether the items listed by Guenther were actually paid or whether they were nondeductible personal expenses. The schedules provided by Guenther to Liebert for 1980 represented that certain expenditures *594 were expenses of petitioner, when in fact many of those expenses related to work done on Guenther's personal residence or were otherwise nondeductible personal expenses. In addition, amounts set forth on the schedules prepared by Guenther as expenses of petitioner did not represent payments actually made. Other amounts set forth on the schedules prepared by Guenther and submitted to Liebert as expenses of petitioner were spent on personal travel and entertainment of Guenther, his family, and friends. Some of the expenses had been reimbursed. The schedules submitted by Guenther to Liebert as expenses of petitioner also included duplications of amounts deducted on Guenther's personal income tax returns. During 1980, 1981, and 1982, petitioner incurred operating expenses for depreciation, insurance, interest and bank charges, maintenance, miscellaneous and professional expenses, taxes, and utilities. On its tax returns for those years, however, petitioner claimed amounts far exceeding the amounts actually incurred. The amounts incurred and the amounts claimed for those items during those years are as follows: Year
Incurred
Claimed
1980
$ 26,801
$ 67,830
1981
33,891  53,148
1982
35,330  60,343
*595 Petitioner's income tax returns for 1983 and 1984 were prepared after an investigation of petitioner and Guenther had been commenced by the Internal Revenue Service (IRS). On those returns, petitioner claimed operating expenses, including depreciation, of $ 45,410 for 1983 and $ 33,279 for 1984. In 1980, petitioner received $ 20,677 in taxable income that it failed to report on its Federal income tax return. As a result of underreporting of income and overreporting of expenses for 1980, 1981, and 1982, petitioner claimed net operating loss carryforwards on its 1983 and 1984 income tax returns in the amounts of $ 19,473 and $ 22,546, respectively. Petitioner also overstated depreciation expense on its 1983 and 1984 income tax returns. As a result of these claims, petitioner understated its income tax for 1983 and 1984. Guenther was born in 1927, raised in Milwaukee, Wisconsin, and joined the military in 1945 after graduation from high school. He served in the United States Army for one year in the United States and one year in the South Pacific. He was honorably discharged with the rank of sergeant. Thereafter, he attended Michigan State University, receiving a bachelor's *596 degree in forestry and a master's degree in forest products. Guenther was married to Marva Guenther for 27 years ending in 1984. He had a daughter, Victoria Hudson, from a previous marriage. Guenther and Marva Guenther had a daughter, Lisa Guenther. Commencing in about 1956, Guenther was involved in marketing of building materials. For 25 years he held a position with Georgia-Pacific that involved substantial national and international travel. According to Guenther, his efforts contributed significantly to the growth of Georgia-Pacific into a large company. In 1980, Georgia-Pacific was moving to Atlanta, Georgia, and Guenther did not wish to leave Portland. Therefore, he left Georgia-Pacific and began employment as an executive with the R. B. Pamplin Corporation in Portland. Guenther left the R. B. Pamplin Corporation at least in part because of tax difficulties involving the IRS. Guenther was audited by the State of Oregon and by the IRS for 1977, with insignificant results. Thereafter, he was audited by the IRS for 1978 and 1979. That audit led to a claim of deficiencies and additions to tax for fraud, as discussed in T.C. Memo. 1987-440, remanded temporarily *597 for further hearing 889 F.2d 882 (9th Cir. 1989), but still on appeal. Guenther was investigated by the Criminal Investigation Division (CID) of the IRS. An audit for 1978, 1979, and 1980 led to a fraud referral to the Department of Justice, but the Department of Justice declined prosecution. In 1983, Guenther was notified that he was no longer under investigation for 1978 through 1980. A subsequent civil investigation led to a fraud referral and indictment for 1980, 1981, and 1982. The United States District Court for the District of Oregon suppressed statements and documents provided to the IRS during the investigation on the ground that they were obtained in violation of Guenther's Fourth and Fifth Amendment rights. The criminal proceedings were thereafter dismissed. Other litigation also resulted from an IRS attempt to summon petitioner's books and records from Guenther as president of petitioner. The United States District Court for the District of Oregon ordered petitioner's records to be produced pursuant to the summons served on Guenther. In February 1984, those proceedings were dismissed on motion of the United States on the ground that Guenther had *598 complied with the summons. Guenther is an intelligent and sophisticated businessman with knowledge of the tax laws. He was responsible for entries on petitioner's tax returns and knew that they were erroneous. The underpayments of tax on petitioner's tax returns for 1983 and 1984 were due to fraud on the part of Guenther. OPINION As a result of his prior experience, by the time this case was tried in June 1990, Guenther was sophisticated and clever about Federal tax litigation matters. The lawyers who represented him at the time the petition was filed and in prior proceedings had withdrawn. But Guenther, on behalf of petitioner, apparently buoyed by his prior successes, represented his corporation with skill. His strategy was to ignore the merits of the case and to portray a picture of Government abuse and overreaching. He also attempted to create the appearance that the Court was rushing him and cutting off his cross-examination of respondent's witnesses. He made various procedural objections that are discussed below. During 17 hours of trial conducted over 3 days, respondent called 33 witnesses. Two witnesses testified in telephone conference calls, pursuant to the *599 agreement of the parties. Guenther was advised that a decision in this case might have collateral estoppel effect on subsequent proceedings involving greater amounts in issue for earlier years. See Peck v. Commissioner, 904 F.2d 525 (9th Cir. 1990), affg. 90 T.C. 162 (1988). Notwithstanding warnings by the Court prior to and during the trial, Guenther presented no evidence that petitioner was entitled to deductions beyond those allowed by respondent, which were substantially less than those claimed on petitioner's tax returns, as set forth in our findings of fact. Nor did Guenther refute the testimony of witnesses that supported respondent's fraud claim, as discussed below. He did not deny that improper amounts had been deducted. He made an informed and deliberate choice to rest on a chronology of claimed wrongs by the IRS and claimed erroneous rulings by the Court. The deficiencies determined by respondent, therefore, are sustained by reason of petitioner's failure of proof. See Rockwell v. Commissioner, 512 F.2d 882 (9th Cir. 1975), *600 affg. a Memorandum Opinion of this Court; Rules 142(a) and 149(b). Before discussing petitioner's procedural objections, we will determine whether petitioner is liable for the additions to tax for fraud. Additions to Tax for Fraud
The addition to tax for fraud is a civil sanction provided primarily as a safeguard for the protection of the revenue and to reimburse the Government for the heavy expense of investigation and the loss resulting from the taxpayer's fraud. Helvering v. Mitchell, 303 U.S. 391, 401 (1938). Respondent has the burden of proving, by clear and convincing evidence, an underpayment for each year and that some part of the underpayment for each year was due to fraud. Sec. 7454(a); Rule 142(b). This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. A fraudulent underpayment of taxes may result from an overstatement of deductions as well as an understatement of income. Hicks Co. v. Commissioner, 56 T.C. 982, 1013 (1971), *601 affd. 470 F.2d 87 (1st Cir. 1972); Neaderland v. Commissioner, 52 T.C. 532, 540 (1969), affd. 424 F.2d 639 (2d Cir. 1970). The carryforward of amounts tainted by fraud from one year to another supports the additions to tax for fraud in each affected year. See Scallen v. Commissioner, 877 F.2d 1364, 1371-1372 (8th Cir. 1989), affg. T.C. Memo. 1987-412; Technical Industrial Consultants, Inc. v. Commissioner, T.C. Memo. 1966-150. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Fraud will never be presumed. Fraud may, however, be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. A taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, 53 T.C. 96, 105-106 (1969). In Spies v. United States, 317 U.S. 492, 499 (1943), the Supreme Court *602 identified various badges of fraud, including making false invoices or documents and "handling of one's affairs to avoid making the record usual in transactions of the kind, and any conduct the likely effect of which would be to mislead or to conceal." In Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), the Court of Appeals stated that, because fraudulent intent is rarely established by direct evidence, intent may be inferred from various kinds of circumstantial evidence or "badges of fraud" including inadequate records, implausible or inconsistent explanations of behavior, and failure to cooperate with tax authorities. In this case, respondent's numerous witnesses testified that the amounts claimed on petitioner's tax returns were not supported by petitioner's records; moreover records presented to the IRS allegedly supporting the deductions claimed included estimates for work that was never done, bills for work done at and furnishings supplied to Guenther's residence, bills for personal travel by Guenther, members of his family, and friends, and duplications *603 of amounts claimed on various returns of petitioner and of Guenther. Respondent's analysis showed that the cash expenses claimed far exceeded the cash available to petitioner and to Guenther and his family. Former tenants of petitioner testified that the work allegedly done at petitioner's rental property (and depreciated on petitioner's tax returns) during 1980 was not done. Respondent called as witnesses Liebert, Guenther's former wife, and one of his daughters. In cross-examining these individuals, Guenther attempted to raise speculation as to possible reasons for errors on petitioner's tax returns or business justification for deduction of items inherently personal. These explanations, however, were merely implied in Guenther's questions and were not supported by the testimony of any of these witnesses. For example, he cross-examined his daughter, who had testified about payments made on her behalf and deducted by him, as follows: Q Have I called upon you in the past for medical advice in line with your naturopathic work? MS. FITZGERALD: Your Honor, I'm going to renew my objection that this is irrelevant. THE COURT: What's the relevance of that, Mr. Guenther? * *604 * * MR. GUENTHER: -- the relevance would be, Your Honor, that you don't get free medical advice. THE COURT: Well, I don't think we're -- we have any deductions for medical expense -- MR. GUENTHER: No, the -- THE COURT: -- and as -- as she indicated, she was in school during the years that I'm looking at. MR. GUENTHER: The point being, Your Honor, that there are probably two basic ways to compensate someone for services rendered, after the fact or before the fact. When Guenther finally testified, he did not testify about specific items or support the implied explanations raised during his questioning of other witnesses. He did claim that he had intended to use his personal residence as a model duplex for subsequent development of the property. His former wife had not been asked about plans for such development. There was no explanation about how such development would be the business of the petitioner corporation. Moreover, there was no corroboration of any effort to develop the property after January 1973, when a plan for development had been rejected by the Portland City Planning Commission. *605 Notwithstanding respondent's burden of proof as to fraud, there comes a time when the taxpayer must come forward with evidence in support of claimed defenses. It is not enough merely to raise theoretical defenses in an attempt to create a reasonable doubt as to respondent's evidence. Brooks v. Commissioner, 82 T.C. 413, 433 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). Guenther failed to present any plausible rationale for the deductions in dispute. Guenther's only explanation of the improper deductions is that he relied on Liebert, his certified public accountant. During his testimony at trial of this case, Liebert attempted to repudiate statements that he had made and an affidavit that he had given to a special agent during the criminal investigation of Guenther's and petitioner's tax liabilities. Liebert's testimony in this regard was not credible. In any event, Liebert denied that he was aware of or had any explanation for deduction on petitioner's return of expenses relating to Guenther's residence. The deductions in issue here did not involve sophisticated or difficult technical questions under the tax laws. They *606 involved misrepresentation of the nature and the fact of various expenditures. A taxpayer may not rely on alleged errors of his tax preparer as a defense to a charge of fraud if the taxpayer failed to provide the preparer with the proper documentation. Scallen v. Commissioner, 877 F.2d at 1371; Foster v. Commissioner, 391 F.2d 727, 732-733 (4th Cir. 1968); Estate of Temple v. Commissioner, 67 T.C. 143, 162 (1976); Imeson v. Commissioner, 14 T.C. 1151, 1159 (1950). We conclude on the evidence that Guenther was well aware of the lack of support for the claimed deductions and that he misled Liebert. We do not believe that he relied on Liebert to prepare correct tax returns. Rather, he engaged in a comprehensive program of understating tax liability and obscuring the facts relevant to determination of the correct amounts of income, deductions, and tax. We are satisfied that petitioner overstated deductions for 1980, 1981, and 1982, that the overstated deductions are directly traceable to underpayments for 1983 and 1984 *607 resulting from net operating loss carryforwards, and that the underpayments for 1983 and 1984 are due to a consistent pattern of fraudulent conduct on the part of Guenther and petitioner. See American Lithofold Corp. v. Commissioner , 55 T.C. 904, 924-925 (1971). Procedural Matters
Chronology
The statutory notice for 1983 and 1984 was sent to petitioner on September 10, 1987. In that notice, net operating loss carryforward deductions of $ 19,474 and $ 22,546 and depreciation deductions of $ 14,825 and $ 9,278 for 1983 and 1984, respectively, were disallowed. No other adjustments were made for those years. The petition was filed December 9, 1987, and alleged that the statute of limitations barred assessment for 1983. In the answer filed February 9, 1988, respondent alleged fraud in support of the additions to tax and in support of the claim that tax due from petitioner may be assessed at any time under the provisions of section 6501(c)(1). Respondent also alleged that, pursuant to an extension of time to file petitioner's tax return for 1983, the return for 1983 was not filed prior to September 13, 1984. In its reply filed March 22, 1988, petitioner *608 claimed lack of information as to the allegations concerning the extension of time and filing of the tax return for 1983. (The tax returns now in evidence support respondent's allegation.) By notice served January 12, 1989, the case was set for trial in Portland, Oregon, on June 19, 1989. On January 31, 1989, respondent filed a Motion to Continue, noting the relationship between the years in issue and Guenther's and petitioner's tax liabilities for 1980, 1981, and 1982, the examination of which had not concluded. The motion represented that "it is hoped that the civil examinations will be concluded no later than April 30, 1989." The motion further represented that, if the case were continued, it would be possible to consolidate it with any case that arose from the earlier years and that the consolidated cases should be ready to be tried no later than May 15, 1990. Finally, respondent's motion represented that, whether the cases were consolidated or not, the parties could, on or about November 15, 1989, commence the informal discovery and settlement process. Petitioner was given an opportunity to respond to respondent's Motion to Continue. On February 14, 1989, petitioner's *609 counsel moved to withdraw, representing that neither petitioner nor respondent had any objection to the motion. The Motion for Leave to Withdraw as Counsel and the Motion to Continue were granted March 27, 1989. By notice served January 18, 1990, the case was set for trial in Portland, Oregon, on June 18, 1990. On March 5, 1990, respondent filed a Motion to Continue, representing that the examination of petitioner's liability for 1980, 1981, and 1982 had recently been completed and that a statutory notice for 1982 had been sent February 22, 1990. Respondent represented that, if the case were continued, it would be possible to consolidate this case with an anticipated case resulting from the statutory notice for 1982. Respondent further represented: 11. In connection with the Motion to Continue filed by respondent on January 26, 1989, respondent represented to the court that he expected that an anticipated statutory notice regarding tax years 1980, 1981 and 1982 would be issued no later than April 30, 1989. The delay in the issuance of the statutory notice is the result of the attempt by the Internal Revenue Service and petitioner to resolve tax years 1980, 1981 and 1982 prior *610 to the issuance of a statutory notice of deficiency. Petitioner, with the assistance of an attorney, Glen R. Kuykendall, attended meetings with a representative of the Examination Division in an attempt to resolve the tax issues for years 1980, 1981 and 1982. The petitioner met last with a representative of the Examination Division of the Internal Revenue Service during the week of January 16, 1990. 12. If this case is continued, it should be ready to be tried no later than January, 1991. 13. Petitioner has no objection to the granting of this motion. From respondent's motion, it was apparent that the parties had been giving attention to the issues in this case and were then familiar with them. As of that time, it was not anticipated that any regular session of the Court would be set between June 1990 and June 1991. (The next regularly scheduled session has now been set for March 25, 1991.) In view of the history of the case, the freshness of the parties' negotiations, and the necessity of a long continuance if the case were continued, respondent's Motion to Continue was denied March 6, 1990. Upon being advised that the case would not be continued, and apparently *611 anticipating the inordinate amount of trial time that would be required for trial in proportion to the amount at issue in this case, respondent commenced various steps intended to shortcut trial preparation and trial. On March 16, 1990, respondent served on petitioner a request for admissions, interrogatories, and a request for production of documents. On April 13, 1990, petitioner sent to the Court a letter, which was filed as petitioner's Motion for Protective Order, setting forth petitioner's allegations of IRS harassment. The Motion for Protective Order was denied. Petitioner did not, however, file a timely or adequate response to respondent's request for admissions, answer the interrogatories, or produce documents requested by respondent. On May 2, 1990, respondent filed a Motion to Compel Responses to Respondent's Interrogatories to Petitioner and a Motion to Compel Production of Documents. Upon review of the interrogatories, the Court concluded that they called for information already in respondent's possession and served no purpose. The Court denied respondent's motion relating to the interrogatories. Respondent's Motion to Compel Production of Documents, however, was *612 granted. On May 9, 1990, respondent filed a Motion to Show Cause Why Proposed Facts Should Not Be Accepted As Established, in accordance with Rule 91(f), attaching a proposed stipulation. Petitioner was ordered to respond to the motion on or before June 4, 1990. No response having been received, on June 6, 1990, the Court ordered that certain facts set forth in the proposed stipulation would be deemed stipulated but did not deem stipulated those matters that were not appropriate for stipulation under Rule 91(a) and were the essence of the dispute between the parties in this case. That order stated: Respondent is admonished that the Rules of this Court are not intended to and should not be used to induce taxpayers to forfeit their cases or to impose upon the Court the obligation of sifting out unreasonable and overreaching demands by respondent. Petitioner is admonished that it retains the burden of proving its entitlement to the deductions claimed on its tax returns for the years in issue and to produce to respondent all documentary evidence supporting its claims. Subsequently, the Court received petitioner's purported response to the Court's order *613 for response to the motion to show cause. That response was not in compliance with the Court's rules or order and did not set forth any reason why the June 6, 1990, order should be changed as to the matters deemed stipulated. On May 29, 1990, petitioner filed a Motion to Continue. As of that time, petitioner had elected not to file a petition in this Court for the earlier years, deciding instead to pursue a claim for refund suit in the United States District Court. Petitioner's motion alleged: 5. The petitioner's attorney is totally consumed with preparation of a motion regarding the temporary remand to the Tax Court for the 1978-1979 by the Court of Appeals. 6. Additionally the petitioner's attorney will next be envolved [sic] with preparation for a District Court case envolving [sic] 1980-1981-1982 on behalf of the petitioner. 7. This case, 1983-1984, is definitely the cart before the horse. * * * 11. The background of this case screams for a continuance for at least one year. 12. Respondent suggested petitioner submit this motion. It was apparent that waiting for (1) payment of any disputed amounts for the earlier years, (2) claim for *614 refund and action on that claim, and (3) disposition of a suit in the District Court would delay indefinitely resolution of this case, absent settlement. Petitioner's motion was denied. Discussion
During trial of this case, numerous witnesses, including Guenther, testified to lack of memory and lack of records going back to 1980, the year in which most material facts occurred. The testimony of two of petitioner's former witnesses had to be taken by telephone. Several witnesses appeared to be ill or elderly. One witness was brought from jail by writ of habeas corpus. The difficulty of reconstructing events occurring many years ago, and the likelihood that such problems would merely get worse in the event of an indefinite postponement, reinforced the Court's decision that the case should not be continued. See Durovic v. Commissioner, 54 T.C. 1364, 1393 (1970), affd. in part, revd. in part, and remanded 487 F.2d 36 (7th Cir. 1973), on remand 65 T.C. 480 (1975), affd. 542 F.2d 1328 (7th Cir. 1976). That decision was consistent with *615 the Court's policy, expressed in Rule 134 and the Standing Pre-Trial Order served with the notice of trial, that continuances will be granted only in exceptional circumstances. See Manzoli v. Commissioner, 904 F.2d 101 (1st Cir. 1990), affg. a Memorandum Opinion of this Court. Although 2 weeks had been set aside for the June 1990 Portland session, all other cases submitted during that session required a total of less than 1 and 1/2 days of trial (beyond the day of the calendar call). Thus, the time reserved for trial of cases in Portland, and the resources of the Court marshalled to conduct the trial session, would have been wasted if this case had not been tried at that session. See Brooks v. Commissioner, 82 T.C. 413, 429-430 (1984), affd. without published opinion 772 F.2d 910 (9th Cir. 1985). We express no opinion as to whether this case should have been tried or settled, but we are satisfied that it should not have been postponed. Although petitioner's Motion for Protective Order was denied, the Court refused to allow respondent to set up defaults in this case through discovery efforts that were unnecessary because all of the *616 information needed to prepare respondent's case was already in respondent's possession. Respondent was entitled, however, to require petitioner to come forward with any additional documents that it would offer in evidence at trial. (Moreover, petitioner's failure to produce documentation in support of deductions justifies the inference that deductible expenses were not incurred beyond those allowed by respondent.) Guenther complains that he was forced to testify about his intended development of his residential property "when it was to be reserved for any pending 1980, 81, 82 civil case." Petitioner was not, however, entitled to withhold evidence in an attempt to surprise respondent in another case. Fortunately, respondent was not prejudiced by the belated claim, because documents referred to by Guenther during his testimony provided the means of discrediting his claim. Guenther contends that the Court erroneously granted respondent's Motion to Show Cause Why Proposed Facts Should Not Be Accepted As Established as provided in Rule 91(f), because the motion was not timely. Rule 91(f) *617 requires that such motion be made not later than 45 days prior to the date set for the call of the case from the trial calendar. The motion was served on petitioner and mailed to the Court from Portland, Oregon, on May 4, 1990, although it was not received in Washington, D.C., until May 9, 1990. The calendar call was June 18, 1990. The motion was thus timely under Rule 25(a), which provides: (a) Computations: (1) General: In computing any period of time prescribed or allowed by these Rules or by direction of the Court or by any applicable statute which does not provide otherwise, the day of the act, event, or default from which a designated period of time begins to run shall not be included, and (except as provided in subparagraph (2)) the last day of the period so computed shall be included. If service is made by mail, then a period of time computed with respect to the service shall begin on the date after the date of mailing. Guenther also complains that the Court allowed IRS agents to testify without requiring a written expert report prepared and exchanged in accordance *618 with Rule 143(f) and the Standing Pre-Trial Order. The Court ruled, however, that the witnesses would not be testifying as experts, and their opinions would not be considered. The witnesses merely identified documents that had been turned over to them by petitioner, or petitioner's agents, and explained summaries of documents that were otherwise in evidence. See Goldberg v. United States, 789 F.2d 1341, 1343 (9th Cir. 1986); United States v. Orlowski, 808 F.2d 1283, 1289 (8th Cir. 1986); United States v. Dana, 457 F.2d 205, 207 (7th Cir. 1972). Finally, petitioner implies that the evidence presented by respondent was illegally obtained. Guenther successfully caused much of the same evidence to be suppressed in a criminal proceeding brought against him. The basis for the suppression order was that Guenther had been misled into believing that the evidence was to be used solely for civil purposes. There is no similar reason to suppress the evidence in this case, when it was specifically delivered to respondent's agent for purposes of the civil tax proceedings. Moreover, to the extent that the suppression order in Guenther's *619 criminal case was based on his Fifth Amendment privilege, that privilege is not available to the corporate petitioner. Hale v. Henkel, 201 U.S. 43 (1906); Wild v. Brewer, 329 F.2d 924 (9th Cir. 1964); see United States v. Popkin, 623 F.2d 108, 110 (9th Cir. 1980); United States v. Ellsworth, 460 F.2d 1246, 1248 (9th Cir. 1972). There is no reason to conclude that the records are not admissible in this case. We have considered petitioner's other arguments, and they are equally without merit. Decision will be entered for the respondent .